

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-1995

# Gov't of VI v Isaac

Precedential or Non-Precedential:

Docket 93-7821

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Gov't of VI v Isaac" (1995). *1995 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 93-7821


GOVERNMENT OF THE VIRGIN ISLANDS

v.

SAMUEL ISAAC,
                    Appellant


On Appeal from the District Court of the Virgin Islands
(D.C. No. 93-cr-00103)

Argued December 6, 1994

Before:  SLOVITER, Chief Judge, SCIRICA
        and COWEN, Circuit Judges

(Filed March 9, 1995)

Stephen A. Brusch (Argued)
Office of Federal Public Defender
Charlotte Amalie, St. Thomas, USVI  00804-1327

        Attorney for Appellant

Kim L. Chisholm (Argued)
Office of United States Attorney
Charlotte Amalie, St. Thomas, USVI 00802-6924

        Attorney for Appellee

<u>OPINION OF THE COURT</u>

SLOVITER, <u>Chief</u> <u>Judge</u>.

Samuel Isaac appeals his conviction for voluntary manslaughter imposed after jury trial in the District Court of the Virgin Islands. We will vacate the conviction and remand for a new trial because, upon reviewing the evidence presented at trial, we conclude that the court erred in refusing to instruct on justifiable homicide and offering resistance to prevent injury.

I.

**<u>FACTS</u>**

Defendant Samuel Isaac worked as a helper and occasional bartender at the Super Pool Bar and Restaurant in St. Thomas. On May 24, 1993 Frederick Barry, also known and commonly referred to as Soca, spent several hours at the Super Pool Bar where he met his friends Theodore Barzey, Richard Fahie, Julien Cline, and Gilbert Smith. During that time Soca bought and drank at least three drinks. At trial, Fahie testified that they were talking about the "olden days, who could throw down who, and . . . who was the strongest." App. at 52.

Isaac arrived at the Super Pool Bar for work around 7:00 p.m. He had come from his day job as a mechanic at an auto repair shop. When Isaac arrived, Soca had been there for a few hours and, according to Isaac, was arguing loudly. Isaac had seen Soca in the bar before. Isaac had never had any trouble

with Soca in the past, but testified he knew that Soca had a general reputation for being a violent person. App. at 259. Isaac testified that while he was working he heard Soca say that he had a gun and threaten to take out anyone who "messed" with him.

Eventually a physical altercation broke out between Soca and Isaac, leading to Soca's death by stabbing. The events leading up to the death were hotly contested at trial. What is not in dispute is that Soca received a fatal, two-inch stab wound on his right chest, and that Isaac was responsible. There was no exterior blood and apparently Soca died from internal bleeding. A pathologist called by the prosecution testified that it was likely that Soca did not even realize he had been stabbed because the alcohol would have deadened his senses.

By the time the police arrived at the scene, Soca was dead. Isaac immediately identified himself to a police officer as the "one involved" in the stabbing and did not try to flee the scene. Isaac testified that he must have dropped the knife, but it was never recovered.

At trial four of the witnesses for the prosecution were long-time friends of the deceased. Theodore Barzey, a friend of Soca's for over thirty years, testified that he was at the Super Pool Bar drinking with Soca and other men on the evening of May 24th. Barzey testified that he left the Super Pool Bar for another club with Fahie. Both men testified that when they left,

Soca was outside leaning on the porch. Within a few minutes they heard bottles breaking and returned to find Soca lying on the floor stabbed.

Julien Cline, another friend of Soca's, arrived at the Super Pool Bar around 8:20 p.m. and noticed that Soca was drinking and had "had a little bit too much" although he did not believe Soca was causing any trouble in the bar. App. at 68. Cline observed Soca going back and forth between the bar and an outside balcony and saw Soca talking to a food server at the bar. Then Cline saw Soca raise his hand to the bartenders at the bar though he could not tell if Soca touched Isaac. Cline testified that Isaac pulled down a knife from a high shelf and swung at Soca's neck. Cline could not tell whether the knife touched Soca. Soca backed up away from the bar, picked up bottles off of a table, and threw them at Isaac. At that point Cline fled the bar and returned minutes later to find Soca lying on the ground.

Much of Cline's testimony at trial directly contradicted a statement he gave police immediately after the incident in which Cline said that Soca had been "messing" with everyone in the bar, that Soca pushed the bartender and said, "You want something with me;" and that Soca "reached down to his foot, pretending that he was reaching for something." Trial Transcript at 131-42. At trial, Cline denied having made these statements. The police statement was signed by Cline.

Gilbert Smith, a friend of Soca's for over thirty years, testified he observed Isaac and Soca come in from the balcony and approach the bar. Smith saw Isaac pull down a knife from above the bar. Smith said to Soca, "Soka, bring your scunt over here. Come sit down. Soka, bring your scunt and come over." Then, Smith heard Soca say to Isaac, "You have a knife. I will show you what I have" and saw Soca reach down around his foot. Trial Transcript at 170. Smith testified "I don't know whether it was a gun or what. . . . I see [Isaac] passing with a knife across [Soca's] throat . . . [and] that is where Soka was getting up from bending down to get what he had." Trial Transcript at 170. Isaac tried to get out from behind the bar "[a]nd Soka took some dishes . . . [and] went in the cooler and was throwing beers at [Isaac]." Trial Transcript at 171-72. At that point, Smith fled the bar. Trial Transcript at 173. Smith did not know what caused Isaac to pull the knife or if the two men had argued on the balcony.

Albata Woods, the owner of the Super Pool Bar and a cousin of Soca's, was outside the bar at an ice cooler when the stabbing occurred. He met Soca in the entrance way and, lifting Soca's shirt, found the stab wound. Woods testified that Soca had a reputation for violence when he drank and that Isaac had never caused any problems in the bar.

Charlesworth Richards, the bartender at the Super Pool Bar, testified that Soca was loud, intoxicated, and cursing.

Richards watched Soca hit another bar patron several times in the chest. App. at 158. The other patron left the bar and, at that point Soca approached the bar, pushed Isaac, and hit Isaac in the chest. App. at 160. Isaac walked away from Soca and said "he ain't want no trouble." App. at 160. Soca "reached after [Isaac] and started beating him," App. at 161, and came around the bar and chased Isaac. App. at 163. Isaac tried to run outside and Richards himself ran away from the bar.

Isaac testified in his own defense. When he arrived at the bar Soca was already there arguing loudly with "fight talk." Isaac stated that he heard Soca say that he had a gun, that he "would take all of you one by one," and, saying on the phone that, "I kill two already and one more going to die tonight." App. at 240-41. Sometime thereafter he was standing behind the bar cleaning dishes when Soca came up to him and said, "You want something" and Isaac said "No." Then Soca reached over the counter, pushed Isaac, and hit him hard in the chest with the back of his hand. App. at 242-43. Isaac told Soca to "behave himself," and Soca said, "I don't give a fuck about you." App. at 243. Soca started throwing bottles and plates and came around the counter making Isaac back up away from the bar. App. at 244.

Isaac testified that Soca then reached down at his ankle and said "You want to see something? I have something for you." App. at 245. Isaac testified that "I reached back with the knife, and lunge like that, because he was coming forward.

And I lunge like that." App. at 245. Isaac testified that he picked up the knife "[b]ecause he reach down at the ankle to get a gun to shoot me. I was scared. I thought he was going to kill me." App. at 245-56. Isaac testified that he never intended to kill Soca. App. at 246.

Isaac was charged with second degree murder. The court gave instructions on self-defense and the lesser included offense of voluntary manslaughter but refused the defense's request to instruct on excusable homicide, V.I. Code Ann., tit. 14, § 926, justifiable homicide in resisting any attempt to commit a felony, id. § 927(2)(A) or offering resistance by a party to be injured, id. § 41(2). The jury acquitted Isaac of second degree murder and found him guilty of voluntary manslaughter. The court sentenced Isaac to five years imprisonment. This appeal followed.

On appeal, Isaac argues three grounds for reversal: that the evidence was insufficient to sustain the conviction; that the prosecutor's comments on summation denied Isaac his due process right to a fair trial; and that the district court erred in refusing to instruct the jury on the defenses of excusable homicide, justifiable homicide in resisting any attempt to commit a felony, and offering resistance by a party to be injured.

## II.

### DISCUSSION

#### A.

### Sufficiency of Evidence

Isaac claims that the evidence adduced at trial was insufficient for a rational jury to find him guilty beyond a reasonable doubt of voluntary manslaughter. The standard of review for a claim of insufficiency of evidence is whether there is substantial evidence, when viewed in the light most favorable to the government, to support the jury's verdict. Government of the Virgin Islands v. Williams, 739 F.2d 936, 940 (3d Cir. 1984).

To convict Isaac of voluntary manslaughter the government must prove 1) that Isaac unlawfully caused Soca's death, 2) without malice aforethought, 3) that the killing was upon a sudden quarrel or in the heat of passion, and 4) that the act was done either with an intent to kill or an intent to inflict serious or grievous bodily injury that would likely cause or result in death. See V.I. Code. Ann. tit. 14, § 924 (defining manslaughter as "the unlawful killing of a human being without malice aforethought," "voluntary" is defined as "upon a sudden quarrel or heat of passion"); see also Government of the Virgin Islands v. Knight, 764 F. Supp. 1042, 1049 (D.V.I. 1991) (defining the four essential elements of voluntary manslaughter).

Once Isaac properly placed self-defense in issue, the government bore the burden of proving beyond a reasonable doubt

that Isaac did not act in self-defense.  See Government of the Virgin Islands v. Smith, 949 F.2d 677, 680 (3d Cir. 1991); see also Government of the Virgin Islands v. Robinson, 29 F.3d 878, 882 n.3 (3d Cir. 1994).  Isaac would be entitled to an acquittal on the ground of self-defense if he reasonably believed that he was in imminent danger of death or serious bodily harm from which he could only save himself by using deadly force.  See V.I. Code. Ann. tit. 14, § 43.

Isaac's argument on the insufficiency of the evidence focuses on the contradictory testimony over whether Soca hit Isaac first, the many inconsistencies in Cline's and Smith's testimony to the police and then at trial, whether Soca reasonably appeared to be reaching for a gun, and whether there was evidence of an intent to kill or to do grievous harm in light of the fact that the stab wound was only two inches.  Isaac emphasizes the undisputed testimony that Soca could have been saved if he had immediately applied pressure to the area and gotten medical help, arguing that this negates the requisite intent.

In reviewing the sufficiency of the evidence, an appellate court must ascertain whether the record, when viewed in the light most favorable to the government, contains substantial evidence to support the jury's verdict.  Glasser v. United States, 315 U.S. 60, 80 (1942).  This evidence must be such that a rational trier of fact could find guilt beyond a reasonable

doubt.  United States v. Brown, 3 F.3d 673, 680 (3d Cir.), cert. denied, 114 S. Ct. 615 (1993).  We will reverse for insufficient evidence only where the failure of the prosecution is clear. Burks v. United States, 437 U.S. 1, 17 (1978).  The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. United States v. Casper, 956 F.2d 416, 421 (3d Cir. 1992).

The fact that the testimony is contradictory does not mean the evidence is insufficient, only that the jury must make credibility determinations.  See United States v. Janotti, 673 F.2d 578, 598 (3d Cir.) (in banc), cert. denied, 457 U.S. 1106 (1982).  Although Richards and Isaac testified that Soca hit Isaac first, some of the government's witnesses testified that Isaac pulled the knife before Soca threw bottles, that Soca did not have a gun, and that Isaac may have swiped at Soca before any bottles were thrown.  Isaac did testify that he never saw Soca with a gun.  App. at 266.  If the jury credited the testimony of the government's witnesses that Isaac pulled the knife before Soca reached down to his leg or that Soca never even reached down to his leg, it could have inferred an intent to inflict harm from Isaac's action of pulling down the knife from the shelf and lunging and "flick[ing]" the knife.  App. at 254.  Even if the jury believed Soca was acting loud and perhaps even threatening, it could have found that Isaac's response was excessive.  Under these facts, we cannot hold as a matter of law that the evidence

was insufficient for a reasonable jury to find beyond a reasonable doubt that Isaac did not act in self-defense.

B.

## Jury Instructions

We turn next to Isaac's assertion that the district court erred when it declined to instruct the jury on excusable homicide under V.I. Code Ann., tit. 14, § 926, justifiable homicide in resisting any attempt to commit a felony under V.I. Code Ann., tit. 14, § 927(2)(A), or offering resistance by a person about to be injured under V.I. Code Ann., tit. 14 § 41(2). Generally, we review the district court's refusal to give certain jury instructions on an abuse of discretion basis. However, where, as here, the question is whether the jury instructions failed to state the proper legal standard, this court's review is plenary. See Savarese v. Agriss, 883 F.2d 1194, 1202 (3d Cir. 1989). In its initial brief filed with us, the government argued that there was insufficient evidence to support the elements of those defenses. In its supplemental brief, the government argues primarily that these other defenses were duplicative of the self-defense instruction and therefore not required.

At Isaac's request, the district court did give the jury instructions on self-defense.[1] The relevant portion of the self-defense charge read:

---

[1]. The Virgin Islands code defines self-defense:

> The right of self-defense does not extend to the infliction of more harm than is necessary for the

Now, this defendant, Mr. Isaac, contends that he acted in self-defense when he stabbed [Soca].[2] The law of the Virgin Islands says as follows: The right to self-defense does not extent [sic] to the infliction of more harm than necessary for the purpose of defense. To justify a stabbing on the grounds of self-defense, there must be not only the belief, but also a reasonable ground for believing, that at the time of the stabbing Samuel Isaac, the party stabbing [Soca], was in imminent or immediate danger of his life or great bodily harm.

The defense of self-defense is limited to this definition and to these circumstances. If you find that the defendant was the aggressor at the time of stabbing, then self-defense is not available to him and you may not consider it.

. . . .

The issue is whether the defendant acted reasonably, and whether his belief was reasonable under the facts as you find them to have been at the time, not whether the victim actually was about to kill or do serious bodily harm to the defendant.

In considering whether this defendant used excessive force in defending himself, you may consider all the circumstances under which he acted. The claim of self-defense is not necessarily defeated if greater force than would have seemed necessary in cold blood was used by the defendant in the heat of passion generated by an assault upon him.

(..continued)
purpose of defense. To justify a homicide on the ground of self-defense, there must be not only the belief but also reasonable ground for believing that at the time of killing the deceased, the party killing was in imminent or immediate danger of his life or great bodily harm.

V.I. Code Ann., tit. 14, § 43.

[2]. The district court used the victim's formal name, Frederick Barry. Because the witnesses generally referred to Barry as Soca, we do so throughout this opinion.

App. at 400-02.

As a general proposition, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  Mathews v. United States, 485 U.S. 58, 63 (1988); see also Robinson, 29 F.3d at 882; Government of the Virgin Islands v. Salem, 456 F.2d 674, 675 (3d Cir. 1972).  In Mathews, the Supreme Court held that this entitlement to an instruction applies even when the defenses are inconsistent, in that case a not guilty plea and a claim of entrapment.  See 485 U.S. at 62. In this case the issue is not that of inconsistent defenses. Instead, we must decide first whether, as a matter of law, the defenses of excusable homicide, justifiable homicide and resistance by a person about to be injured are encompassed in self-defense and were therefore covered by the self-defense charge.  If not, we must decide whether the separate requested charges were warranted on the basis of the evidence presented.

Each of the defenses for which an instruction was sought is covered by a separate section of the Virgin Islands Code.  Section 926 provides that homicide is excusable
> (1) when committed by accident and misfortune, or in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent; or (2) when committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, when no undue advantage is taken, nor any dangerous weapon used, and when the killing is not done in a cruel or unusual manner.

Section 927 defines homicide as justifiable, in relevant part, when committed by any person

> (2)(A) when resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; [or]
>
> . . .
>
> (C) when committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person on whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed . . . .[3]

Section 41(2) states that any person about to be injured "may make resistance sufficient to prevent . . . (2) an offense against his person."

No case that has been called to our attention considers the interrelationship between any of these defenses and self-

---

[3]. Section 927(2)(B), not applicable here, defines justifiable homicide:

> when committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein.

V.I. Code Ann., tit. 14, § 927(2)(B).

defense.  Nor have we uncovered any informative legislative history on that issue.  Thus we are faced with four separate statutory provisions, each detailing an ostensibly independent defense that on its face intersects to some extent with one or more of the others.

Isaac argues that the defenses are not duplicative of self-defense and that each applies in a separate situation.  He argues that even if a jury was not convinced that a defendant reasonably believed s/he was in imminent or immediate danger of his or her life or great bodily harm from the victim (the elements of self-defense under section 43), it might find that the killing occurred through accident and misfortune and without defendant's unlawful intent (the elements of excusable homicide under section 926(1)) or that the killing occurred on sudden combat where no dangerous weapon was used (the elements of excusable homicide under section 926(2)).

We agree that in light of the statutory definition of excusable homicide, it is not duplicative of self-defense.  We note that recently in Robinson, this court considered an appeal by a Virgin Islands defendant charged with first degree murder and convicted of voluntary manslaughter who argued that the district court erred in refusing to instruct the jury regarding self-defense and excusable homicide.  29 F.3d at 879.  After deciding that the court should have instructed on self-defense, we proceeded to consider whether the court should also have

instructed on excusable homicide. Id. at 885. If an excusable homicide defense was encompassed within a self-defense instruction, it is likely we would have ended our discussion. The fact that we did not leads us to conclude that we regarded excusable homicide as separate from self-defense.

It is true that in Government of the Virgin Islands v. Commissiong, 706 F. Supp. 1172 (D.V.I. 1989), the district court held that a rational jury that rejected self-defense could not acquit the defendant by finding excusable homicide. Id. at 1189. We do not read that holding, even if it were binding on us, to suggest that a requested charge of excusable homicide is always encompassed in a self-defense charge. Instead, it was a holding fact-specific to that case. Nor do we hold today that a defendant is entitled as a matter of law to an excusable homicide charge irrespective of whether that defendant has sought and received a self-defense charge. We merely reject the suggestion that an excusable homicide instruction is necessarily encompassed within a self-defense instruction.

We have held that it is not reversible error for the district court to refuse to instruct on excusable homicide if an element of that defense is missing. See Government of the Virgin Islands v. Knight, 989 F.2d 619, 632-33 (3d Cir.), cert. denied, 114 S. Ct. 556 (1993). Therefore, the district court's failure to instruct on excusable homicide in this case will be upheld if

there was no basis in the evidence from which a reasonable jury could have found that defense.

In Knight the defendant intentionally and repeatedly hit the victim's head with a loaded .357 magnum pistol. The defendant specifically requested the district court not to instruct the jury regarding self-defense. Id. at 632 n.7. Instead, the defendant contended that the district court should have instructed the jury on excusable homicide based on defendant's testimony that the victim had grabbed his hand, which held the pistol, and squeezed it, causing the gun accidentally to discharge. This court rejected the claim of error. After parsing the statutory definition of excusable homicide, we found that even if the jury believed all of the defendant's testimony, there was no evidence that he possessed a lawful intent as required by the statute since he admitted that he was intentionally assaulting the victim when the gun discharged. Id. at 632. We rejected the contention that the defendant's intent was lawful because he believed he was in danger, noting that it was undisputed that the defendant initiated the confrontation. We thus concluded, "[n]o evidence supports the conclusion that Knight reasonably believed he was in imminent danger of harm when he assaulted Miller." Id. at 633.[4]

---

[4]. Isaac argues that self-defense and excusable homicide are not the same defense because for self-defense a jury would have to find, inter alia, that Isaac's fear of Soca was reasonable, that the degree of force he used given the perceived threat was reasonable and not excessive, and that he intended to use such force to prevent imminent death or great bodily harm, whereas for

In Isaac's case, the district court considered both prongs of the excusable homicide defense and rejected the need for an instruction on either. The court reasoned that subsection 1 of section 926 (homicide "committed by accident and misfortune . . . and without any unlawful intent") was unavailable because a jury that believed Isaac was committing a lawful act without unlawful intent would find him not guilty under self-defense. We need not decide whether the district court's analysis was correct. But see Knight, 989 F.2d at 632 n.7 (noting the "striking[]" similarity between defendant's argument that his intent was lawful because he believed he was in danger and a self-defense theory). Instead, we conclude that there was insufficient evidence of "accident and misfortune" to justify a charge along those lines. Isaac hypothesizes that as Soca was coming towards him he could have "accidently [sic] and by misfortune lost his balance and fell unto a knife that . . . Isaac lawfully had in his hand." Appellant's Supplemental Memorandum at 5. There is no evidence that the stab wound was inflicted in this manner. Instead, the pathologist testified

(..continued)
excusable homicide under V.I. Code Ann. tit. 14, § 926(1) all the jury need find was that Isaac stabbed Soca by accident and misfortune and had no unlawful intent. To the extent Isaac may be suggesting that his intent could have been lawful even if his perception of a threat was unreasonable, we note that in Knight we specifically referred to a defendant's "reasonable" belief. Because we conclude that Isaac was not entitled to the excusable homicide instruction on other grounds, we need not decide whether only a reasonable belief will support a finding of no unlawful intent.

that the wound "went from front to back, and slightly downward." App. at 214.  The district court is not required to give an instruction based merely on speculation.

The district court also held that Isaac was not entitled to an excusable homicide instruction under subsection 2 because Isaac had caused Soca's death by use of a "dangerous weapon," i.e. a knife.  In Robinson this court held that a defendant who was convicted of voluntary manslaughter was not entitled to an excusable homicide instruction because he had struck the victim with a two-by-four plank, which we characterized as a "dangerous weapon."  29 F.3d at 885-86.  We noted that the Virgin Islands definition of excusable homicide restates the common law and is similar to excusable homicide statutes in other states, such as Florida, California and Mississippi.  Id. at 885.  In those states "dangerous weapon" is defined to mean any weapon that will ordinarily produce death or serious injury, taking into account the manner in which it is used.  Our decision in Robinson was filed after Isaac's original brief in this case, and in light of that decision he concedes that the knife used in this case may also be considered a dangerous weapon and he was therefore not entitled to an excusable homicide instruction under subsection 2.

Turning to justifiable homicide, Isaac claims error in the court's refusal to instruct under section 927(2)(A).  The district court explained merely that a justifiable homicide

instruction would have been duplicative of and was contained within the self-defense instruction.  In support of this ruling, the government argues that self-defense under section 43 and justifiable homicide under section 927(2)(C) are used interchangeably by the Virgin Islands courts and do not differ as applied to a homicide case.

The government cites our decision in Government of the Virgin Islands v. Smith, 949 F.2d 677 (3rd Cir. l991), as support for the proposition that a trial court in the Virgin Islands is not required to give separate instructions on self-defense and justifiable homicide.  In Smith, we held that it was plain error for the district court not to have instructed the jury that it was the government's burden of proof to show absence of self-defense.  Id. at 680.  In the course of reaching that holding we commented that "[k]illing in self-defense is defined as lawful and justifiable homicide" and cited both sections 927(2)(C) and 43.  Id.  We also cited section 928 which makes acquittal mandatory when a homicide is justified.  Id.  See also Robinson, 29 F.3d at 882 (defining killing in self-defense as justifiable homicide and citing both sections 927(2)(C) and 43).  We do not read those passing references as dispositive of the issue before us.  Smith did not consider the need for an instruction on justifiable homicide as a statutory defense, since its discussion was confined to the need to instruct on the burden of proof as to self-defense.

To be sure, there is considerable overlap between self-defense and justifiable homicide. Both entail a homicide committed by the defendant when resisting action by the victim. Isaac argues, however, that a plain reading of self-defense under section 43 and justifiable homicide under section 927(2)(A) demonstrates that they contain different elements. He notes that section 927(2)(A) states in the disjunctive that a homicide is justifiable if committed by a defendant "when resisting any attempt to murder . . ., or to commit a felony, or to do some great bodily injury . . . ." (emphasis added). Therefore, he concludes that even if the defendant did not have reasonable grounds for believing that the victim had put the defendant in imminent or immediate danger to his or her life or great bodily harm (the elements of self-defense), the jury could find that the victim merely may have attempted to commit a different felony, such as an assault.

Although we do not agree with all of Isaac's suggested distinctions between self-defense and justifiable homicide, it is clear from the statutory language that some distinctions exist.[5] On the one hand, we attribute to legislative oversight the fact that section 927(2)(A) does not expressly require, as does

---

[5]. Compare, for example, the explicit requirement in section 43 that "[t]o justify a homicide on the ground of self-defense, there must not be only the belief but also reasonable ground for believing that at the time of killing the deceased, the party killing was in imminent or immediate danger of his life or great harm."

section 43, that the defendant have had "reasonable ground" for believing that s/he was in imminent or immediate danger to be relieved from responsibility for the homicide. Nothing but oversight could account for the fact that the comparable provision in section 927(2)(C) specifies that the defendant is relieved from responsibility only "when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury." Moreover, the comparable California justifiable homicide provision has been construed to require reasonable belief by the victim of the threat. See People v. Ceballos, 526 P.2d 241, 246 (Cal. 1974). We also hold that a requirement of reasonable apprehension must be read into section 927(2)(A).

On the other hand, certain differences in the scope of self-defense and justifiable homicide in the Virgin Islands Code remain. We need note only two differences for this purpose. The self-defense provision applies only when a defendant was in danger of his or her life or great bodily harm. In contrast, sections 927(2)(A) and 927(2)(C) are also available when the defendant resisted any attempt or a design "to commit a felony." Even if the felony referred to in sections 927(2)(A) and 927(2)(C) is construed as a violent felony,[6] that provision is

_____

[6]. Although Isaac discusses the "felony" which the defendant can be resisting as if it must be an assault, nothing in the statutory language confines the "felony" which can justify homicide to a violent felony, an issue we do not have to resolve under the facts of this case but which only magnifies our concern about a broad interpretation of section 927. We note that in

plainly not as restrictive as is self-defense.  The other evident

difference is that the self-defense provision of section 43

applies only when the danger is to the party doing the killing

whereas section 927(2)(A) applies when the danger was to "any

person" and section 927(2)(C) applies when it was to certain

specified persons.

We can see no reason why the Virgin Islands legislature

would have broadened the justifiable homicide defense far beyond

that of self-defense, to the point that some of the limiting

features of self-defense become nullities when compared with the

breadth of the justifiable homicide defense.  However, in light

of the clear statutory language we have no alternative but to

hold that a charge on self-defense is not in itself sufficient to

meet the district court's obligation to charge on each defense

requested.  Thus, we turn to an examination of the record to see

if there was a basis for the jury to find justifiable homicide

under section 927.

Isaac argues that even if the jury did not believe that

he had a reasonable belief that he was in imminent or immediate

(..continued)
People v. Ceballos, 526 P.2d 241 (Cal. 1974), the court limited
the definition of "felony" in California's justifiable homicide
defense to resistance of "forcible and atrocious crimes,"
following the common law.  Id. at 245.  See Wharton's Criminal
Law § 129, at 200 (1994) ("It is justifiable to kill, if
reasonably necessary, to prevent the commission of a felony by
violence or surprise.  Illustrative of the type of felonies
included are murder, rape, robbery, burglary and arson.").  We
have previously noted that the Virgin Islands criminal code also
draws upon the common law.  See Robinson, 29 F.3d at 885.

danger of his life or great bodily harm from Soca so as to satisfy section 43 it still could have found that Isaac held the reasonable belief that he was resisting an attempt by Soca to commit the felony of assault under section 927(2)(A). We agree. It is not our function nor that of the district court to make credibility determinations. It follows that the court erred in declining to instruct the jury on the availability of the justifiable homicide defense.

Isaac's requested instruction on V.I. Code Ann., tit. 14, § 41, resistance by a party to be injured (also called "lawful violence"), stands in the same position as justifiable homicide. However, we have more directly applicable authority for a holding as to the independent nature of defenses under sections 41 and 43 of the Virgin Islands Code. In Salem, a defendant convicted of various assault charges alleged on appeal that the district court erred in refusing his request to instruct the jury on both self-defense and lawful violence under the Virgin Islands Code provisions. 456 F.2d at 675. This court agreed, holding that if the jury accepted the defendant's testimony that he did not intentionally fire at either of his victims and that he made no effort to use his pistol until after other shots were fired, both the self-defense and lawful violence provisions of the Code would have been relevant to his defense. Id. We noted that other witnesses contradicted the defendant's

version of the shooting, but because there was a basis for the requested instruction, it was error not to have given it.  Id.

In this case, the testimony was sharply conflicting. The jury could have believed the testimony of Isaac and Richards that Soca punched Isaac before Isaac swung the kitchen knife or the testimony of Soca's friends that Soca made no assaultive move before the stabbing.  It follows that Isaac was entitled to a jury instruction on both justifiable homicide and lawful resistance to prevent an offense against his person.[7]

---

[7].  Isaac also contends that the prosecutor's summation improperly impugned defense counsel and counsel's role at trial and inflamed the jury's emotions.  The government rejects the characterization of the summation as improper and argues that even if it were, it was not so extreme as to amount to reversible error because of the context of the whole argument, the evidence of guilt was otherwise strong, and the court's curative instruction removed any prejudice.  See United States v. Zehrbach, Nos. 93-7477 & 93-7493, 1995 U.S. App. LEXIS 1304, at *40 (3d Cir. Jan. 23, 1995) (three-part test for assessing prejudice of prosecutorial misconduct).  The government also urges that its comments were made as an "invited response" to defense counsel's style of cross-examination of witnesses and comments on summation.  The law is clear that a prosecutor must not make unfounded and inflammatory attacks on the opposing advocate.  United States v. Young, 470 U.S. 1, 9 (1985).  Because of our decision to remand for a new trial, we need not decide whether the comments were improper when evaluated in light of the closing argument as a whole.  See Government of the Virgin Islands v. Joseph, 770 F.2d 343, 350 (3d Cir. 1985).  We are confident that the trial court will not permit any improprieties on retrial.

## III.

## <u>CONCLUSION</u>

For the reasons set forth, we will vacate the judgment of conviction and remand for a new trial.

Government of the Virgin Islands v. Isaac, No. 93-7821

SCIRICA, Circuit Judge, concurring.

It appears that in this type of case, in which the defendant used deadly force in response to an attack or threat by the victim, the Virgin Islands statutory scheme on culpability -- particularly the defense of justification -- renders a nullity the limitations contained in the defense of self-defense. Nevertheless, I agree that we must follow the statutory language and reverse.

Evidence that the victim was attempting to commit a felony, pursuant to the justification defense, seemingly would track the danger to life or great bodily harm requirement of self-defense.[8] Yet, self-defense requires that the defendant reasonably believe he was in "imminent or immediate danger of his life or great bodily harm" and that he not use more force than

_____

[8]. The court's opinion suggests that a jury could find the victim here was attempting to commit a felony other than an attempt to murder or cause great bodily harm, such as an assault. Yet, the definitions of those assaults classified as felonies in the Virgin Islands Code bear a striking resemblance to attempts to murder or cause great bodily harm. See V.I. Code. Ann. tit. 14, § 295 (1964) (defining assault in the first degree as requiring "intent to commit murder," "intent to kill," or intent to commit various other often-violent felonies); id. § 296 (defining assault in the second degree as attempts to injure by poisoning or disfiguring another); id. § 297 (Supp. 1993) (defining assault in the third degree as assaults, inter alia, with intent to commit a felony, or with a deadly weapon, or by means calculated to inflict great bodily harm, or which inflict serious bodily injury).

necessary, V.I. Code Ann. tit. 14, § 43 (1964).  Because the broader justifiable homicide defense does not so require, id. §§ 927–28, the limitations on self-defense are left meaningless in this type of case.  Although such a result seems incongruous, I am hesitant to write in these restrictions to the statutory definition of justifiable homicide.  Instead, I believe these are policy decisions properly left to the legislature.[9]

---

[9].  See, e.g., Model Penal Code and Commentaries, art. 3 (Introduction), at 4 (1985) ("[T]here often was, and in some states there still is, internal inconsistency of policy, as when limitations on the privilege to kill in self-defense or in defense of others are nullified by the breadth of the justification recognized for crime prevention."); see also id. § 3.04, at 34, 37.