

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-9-2008

# USA v. Broadus

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3770

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Broadus" (2008). *2008 Decisions.* Paper 558.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/558

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3770

———

UNITED STATES OF AMERICA

v.

TROY BROADUS,
Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 04-cr-00061)
District Judge: Hon. Cynthia M. Rufe

———

Submitted Under Third Circuit LAR 34.1(a)
September 8, 2008

Before: SLOVITER, FUENTES and NYGAARD, Circuit Judges

(Filed: September 9, 2008)

———

OPINION

SLOVITER, Circuit Judge.

Troy Broadus ("Broadus") appeals the District Court's denial of his motion to suppress and its refusal to give an innocent possession jury instruction.

**I.**

In the evening of December 1, 2003, Philadelphia Police Officers Curtis Younger and Jacob Williams were on routine patrol in a known high crime area of Philadelphia. Shortly after 9 p.m., they observed a black 2001 Chevrolet Tahoe without a registration sticker, in violation of the Pennsylvania Motor Vehicle Code, 75 Pa. Cons. Stat. Ann. § 1332(b). After the officers ordered the vehicle to stop, Officer Williams approached the driver side while Officer Younger approached the front passenger side where Broadus was sitting. Younger noticed that Broadus was continuously leaning to his left and pressing his elbow against his left side when Younger opened the passenger door to illuminate the inside of the car. According to Younger, Broadus acted nervously and repeatedly stated, "[e]verything's cool, it's all cool." Supp. App. at 19.

Broadus tried to step out of the car, but was told by Officer Younger to "relax." Supp. App. at 19. Younger directed Broadus to put down a box of Chinese food he was holding and to keep his hands in view. When Broadus leaned down to put the food on the floor of the car, Younger touched Broadus' chest and felt his heart "pounding hard." Supp. App. at 20. The left part of Broadus' body was turned away from Younger, and his left elbow and hand remained pressed to his left side.

2

"Fearing [Broadus] might be concealing a firearm," Officer Younger conducted a safety frisk by reaching into the vehicle and touching Broadus' left waist and hip area. Supp. App. at 20. Younger felt the handle of a handgun, and so alerted Officer Williams through the use of a code word. Williams then drew his gun as Younger handcuffed Broadus inside the car for safety reasons. Younger then recovered a loaded Ruger .357 Magnum revolver from Broadus' waistband. Broadus told Younger that he did not have a permit to carry the gun, but asked Younger to "give [him] a break" because he was taking the gun to a relative who owned a bar.[1] Supp. App. at 23. Broadus was then placed under arrest, and was later charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).[2] Broadus pled not guilty, and his appointed counsel filed a motion to suppress evidence on June 2, 2004. The District Court denied the motion after holding a hearing, finding that Officer Younger's pat-down of Broadus for weapons was reasonable under Terry v. Ohio, 392 U.S. 1 (1968).

Prior to closing arguments at the end of a two-day trial, Broadus' counsel informed the District Court that he was not requesting an innocent possession jury charge because

[1] The gun was lawfully owned by Broadus' cousin, Fred Broadus, who had a valid license for it. At trial, Fred Broadus testified that he was a bar owner who on the night in question was having a party at his bar and unintentionally left his gun in the car when he was dropped off at the bar.

[2] The original indictment charged Broadus with a violation of 18 U.S.C. §§ 922(g) and 924(e). A second superseding indictment contained the same § 922(g) charge and added additional factors relating to sentencing enhancements.

3

"[i]t would be inconsistent with" the defense theory that Broadus did not possess the gun.[3]

Supp. App. at 113-14. Broadus' counsel changed his mind after the government's rebuttal argument which referred to Broadus' comment that he was taking the gun to his cousin, but the District Court denied the request for an innocent possession instruction. The Court also denied the jurors' request during their deliberations for a written copy of the knowing possession charge, instead re-reading those instructions orally. Broadus' counsel again renewed his admittedly "very belated request" for an innocent possession charge, which the Court again denied. Supp. App. at 154. The jury found Broadus guilty of the § 922(g) charge.

Broadus filed timely post-verdict motions, which were denied, and he was sentenced to thirty months imprisonment followed by three years supervised release. Broadus timely appeals his conviction.

## II.

A.    *Terry* Weapons Frisk

We review the District Court's denial of the motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over the Court's application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir.

---

[3] The defense theory at trial was that Broadus should not have been arrested because the gun was found between the vehicle's center console and the passenger seat rather than in Broadus' waistband.

4

2002).

The "general rule" under the Fourth Amendment is that "warrantless searches are presumptively unreasonable . . . ." Horton v. California, 496 U.S. 128, 133 (1990). However, the Supreme Court has recognized a number of exceptions to this rule; the one relevant to this case is the Terry "stop and frisk." See United States v. Ubiles, 224 F.3d 213, 217 (3d Cir. 2000). In Terry, 392 U.S. at 27, the Supreme Court held that a police officer may conduct a reasonable search for weapons for his/her own protection without violating the Fourth Amendment "where [s/he] has reason to believe that [s/he] is dealing with an armed and dangerous individual . . . . The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [his/her] safety or that of others was in danger." To make a showing of reasonable suspicion, "[t]he officer must be able to articulate more than an inchoate and unparticularized suspicion or 'hunch' . . . ." Ubiles, 224 F.3d at 217 (citations and internal quotation marks omitted). Reviewing courts must make the reasonable-suspicion determination based on the totality of circumstances. See United States v. Arvizu, 534 U.S. 266, 273 (2002).

Although Broadus' nervousness was not alone enough to support the inference that he was concealing a weapon, see United States v. McKoy, 428 F.3d 38, 41 (1st Cir. 2005), the circumstances in this case are closer to our decision in United States v. Moorefield, 111 F.3d 10, 11-12, 14 (3d Cir. 1997), where we reversed the district court's suppression

5

of the firearm seized from the defendant, who was a passenger in a car subject to a lawful traffic stop. We held that the defendant's "furtive hand movements and refusal to obey the officers' orders," specifically the order to remain in the car with his hands in view, as well as the fact that the defendant leaned back and appeared to shove something toward his waist, constituted suspicious behavior. Id. at 14. Indeed, "Moorefield's behavior embodied the kind of specific, articulable facts that Terry contemplates and, therefore, warranted a pat-down search for weapons." Id.

We dispose of this case similarly. Pursuant to a lawful traffic stop, Officer Younger "lawfully ordered [Broadus] to remain in the car with his hands in [view]." Id. at 13. The pat-down for weapons was also lawful because Officer Younger "pointed to 'specific and articulable facts which, taken together with rational inferences from those facts,' reasonably warranted the pat-down." Id. at 14 (quoting Terry, 392 U.S. at 21). Broadus acted nervously, his heart was pounding, he attempted to get out of the car, and he repeatedly stated that "everything's cool." Supp. App. at 19. Although nervousness standing alone does not justify a Terry frisk, "such behavior may be considered as a factor in the totality of circumstances." United States v. Brown, 188 F.3d 860, 865 (7th Cir. 1999). The totality of the circumstances also included Broadus continually moving his left arm and hand to his left side, almost preventing Younger from seeing his left hand even though Younger had asked him to keep his hands in view. Furthermore, the traffic stop took place in a high crime neighborhood, which is a relevant, although not by itself

6

sufficient, factor in the Terry analysis. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Because an "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," Terry, 392 U.S. at 27, Officer Younger's pat-down search of Broadus was reasonable under the Fourth Amendment.

B.      Innocent Possession Instruction

We review the District Court's refusal to give certain jury instructions for abuse of discretion. See Gov't of V.I. v. Isaac, 50 F.3d 1175, 1180 (3d Cir. 1995). "As a general proposition, 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor,'" even when the defenses are contradictory. Id. (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)). However, the District Court's failure to instruct on innocent possession "will be upheld if there was no basis in the evidence from which a reasonable jury could have found that defense." Id. at 1182.

Although the Court of Appeals for the District of Columbia has adopted the innocent possession defense to a felon-in-possession charge, see United States v. Mason, 233 F.3d 619 (D.C. Cir. 2001), this court has not done so. In any event, even if we followed Mason, Broadus cannot establish that he fits within that holding. In Mason, the court held that a narrow innocent possession defense may apply where "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm

7

was transitory . . . ." 233 F.3d at 624. In order to satisfy the second element, "'a defendant's actions must demonstrate both that he had the intent to turn the weapon over to the police and that he was pursuing such an intent with immediacy and through a reasonable course of conduct.'" Id. (citation omitted). Only when both of these requirements are met is possession "'excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement.'" Id. (citation omitted).

As the District Court noted, Broadus primarily relies on his statement to Officer Younger that the gun was his cousin's and he was returning it to him at the bar as sufficient evidence to entitle him to an innocent possession jury instruction. Under Mason, the innocent possession defense applies only to a defendant whose actions show that s/he intended to return the firearm to the police, not to another citizen; here, nothing in the record shows that Broadus intended to turn the gun over to the police or "'that he was pursuing such an intent with immediacy and through a reasonable course of conduct.'" Id. (citation omitted); see also United States v. Hendricks, 319 F.3d 993, 1007-08 (7th Cir. 2003). Broadus had the opportunity to promptly notify Officer Younger of the weapon when Younger approached the car, but he failed to do so. In fact, the evidence indicates that Broadus tried to prevent Younger from finding the gun by constantly leaning to his left and pressing his elbow against his left side. Thus, "[w]ithout any evidentiary support that [Broadus] took appropriate action to turn the weapon over to the police, the [D]istrict

8

[C]ourt properly refused [Broadus'] request to give the 'innocent possession' instruction."

Hendricks, 319 F.3d at 1008.

## III.

For the above-stated reasons, we will affirm the judgment of the District Court.