**GOVERNMENT OF the
VIRGIN ISLANDS**

v.

**JOSEPH, Emmanuel, Appellant.**

No. 84–3558.

United States Court of Appeals,
Third Circuit.

Argued April 24, 1985.
Decided Aug. 12, 1985.
As Amended Aug. 21, 1985.

**344**

Britain H. Bryant (argued), Bryant, Lenahan & Eltman, Christiansted, St. Croix, V.I., for appellant.

Leonard Birdsong (argued), Sp. Asst. U.S. Atty., U.S. Dept. of Justice, Christiansted, St. Croix, V.I., for appellee.

Before ADAMS, GARTH and BECKER, Circuit Judges.

### OPINION OF THE COURT

GARTH, Circuit Judge:

Emmanuel Joseph was convicted on both counts of a two count information charging him with rape in the first degree in violation of V.I.Code Ann. tit. 14 § 1701(1)–(2).[1] He now appeals, arguing: (1) that Count I of the information lacked the specificity necessary to enable Joseph to prepare an adequate alibi defense because it failed to aver the date on which the alleged crime occurred; (2) that there was insufficient evidence to sustain Joseph's conviction on Count 1; and (3) that comments made during the government's closing argument occasioned prejudice to Joseph sufficient to require reversal of the jury's verdict.

We hold that the record evidence was insufficient to support a judgment of conviction on Count I.[2] We further hold that although the prosecutor's remarks during summation were unfortunate, they did not constitute reversible error. We therefore reverse the judgment of conviction on Count I only and remand this case to the district court so that Joseph may be resentenced on Count II in accordance with our holding.

### I.

Emmanuel Joseph was charged by information with having raped Taisha Joseph, his eight-year-old step-daughter, on several occasions. Specifically, the first count of the information charged that "in and about May or June, 1983," Joseph raped Taisha Joseph in violation of V.I.Code Ann. tit. 14 § 1701(1) and (2). The second count charged that Joseph committed a similar criminal act involving Taisha on or about October 23, 1983.[3]

The case was tried to a jury. Taisha Joseph testified that her birthday fell on June 24. Transcript at 44. Testimony, concerning the alleged rape on October 23,

---

**1.** V.I.Code Ann. tit. 14, § 1701(1)–(2) provide:

**§ 1701. Rape in the first degree**

Whoever perpetrates an act of sexual intercourse with a female not his wife—

(1) when through idiocy, imbecility or any unsoundness of mind, either temporary or permanent, she is incapable of giving consent, or, by reason of mental or physical weakness or immaturity or any bodily ailment, she does not offer resistance:

(2) when her resistance is forcibly overcome:

is guilty of rape in the first degree and shall be imprisoned not more than 20 years.

**2.** Because we conclude that there was not sufficient evidence to sustain a judgment of conviction on Count I, we need not decide whether Count I, as drafted, was sufficiently specific to enable Joseph to prepare his defense.

**3.** An initial information, containing ten counts, charged Joseph with six counts of rape in the first degree, two counts of carnal abuse, and two counts of assault in the first degree. Joseph moved to have several counts consolidated on the ground that they charged the same offense committed by multiple means and to have Counts I–V (charging various substantive violations in and about May or June 1983) dismissed for lack of specificity sufficient to enable Joseph to prepare his defense. In the alternative, Joseph sought a bill of particulars to apprise him of a specific time of occurrence for the offenses charged in Counts I–V.

The motion to dismiss and the bill of particulars were denied. The district court, however, ordered that the information be amended to charge only the two Counts upon which Joseph was ultimately tried.

1983 (Count II), was then elicited from Taisha. Transcript at 46–53. In order to prove the May-June 1983 offense charged in Count I, the government thereafter proceeded to ask Taisha a series of questions as to whether Joseph had ever "troubled" her *prior to* October 1983. The government sought to establish that Joseph raped Taisha sometime in May or June of 1983 by keying to the date of Taisha's June 24 birthday. Taisha's answers as to the time that the alleged rape took place.

At the close of the government's evidence,[4] Joseph moved for a judgment of acquittal on both counts. This motion was denied. At the close of all evidence, the motion was again renewed and again denied. The jury thereafter returned a guilty verdict on both counts. Post trial, Joseph moved for a judgment of acquittal or, in the alternative, for a new trial. By order dated August 9, 1984, the district court denied this motion, and on August 22, 1984, Joseph was sentenced to a twelve year term of imprisonment, which did not apportion the sentence between Counts I and II.

## II.

■■■ We turn first to the question of whether the evidence was sufficient to sustain Joseph's conviction on Count I of the information. On review of the denial of a motion for a judgment of acquittal brought on the basis of the insufficiency of the evidence to support a conviction, this court must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury decision. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 469 L.Ed. 680 (1942); *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir.1983). The reviewing court thus considers the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom, to determine whether a rational trier of fact could have found guilt beyond a

reasonable doubt. Should the conclusion be reached that a reasonable doubt must exist in the mind of a reasonable juror, acquittal must be granted. *See, e.g., Curley v. United States*, 160 F.2d 229, 232–33 (D.C.Cir.1946), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947).

### A.

In the present case, Taisha Joseph testified as to the sexual advances allegedly made by Joseph. She testified as follows:

"Q [by ASSISTANT UNITED STATES ATTORNEY CAPDEVILLE] Now do you remember telling Jackie [Taisha's mother] what happened when you went into the bedroom?

"A Yes.

"Q Okay.

"And could you tell us what happened when you were put on the bed, Taisha?

"What happened?

"Did Dove [Joseph] do anything to you?

"Did Dove [Joseph] get on the bed at all, Taisha?

"ATTORNEY BRYANT [Joseph's attorney]: Your Honor, leading is one thing, but this is actually putting words in this little girl's mouth. She said she couldn't remember three times.

"THE COURT: Sustained—sustained, Mr. Bryant.

"ATTORNEY BRYANT: Thank you, Your Honor.

"THE COURT: Taisha, now just before this gentleman asked you some questions you promised that you would tell the truth even if it hurts to tell the truth; didn't you?

"All right; now you take that microphone, and you hold it right up to your mouth like this, and you tell us what happened, and the sooner you tell us what happened, the sooner all of this will be over and you can go home. Okay?

---

**4.** Additional testimony by Rhonda Joseph, Taisha's six-year-old half-sister, and Jacqueline Joseph, Taisha's mother, was also provided as part of the government's case in chief. Their testimony is discussed in text, *infra*.

"You just tell us the truth. Now you go ahead and tell us; okay?

"THE WITNESS: Yes.

"He put his pee pee inside of my—

"THE COURT: What did you just say?

"THE WITNESS: He—I said—he put his pee pee inside of mine.

"THE COURT: He did.

"Did you get that?

"BY ATTORNEY CAPDEVILLE:

"Q. Now, Taisha, did it hurt?

"A Yes.

"Q And did you say anything?

"A No.

"Q Did you cry at all?

"A A little.

"Q Did Dove [Joseph] tell you anything? What did he tell you?

"A I forgot. I don't know.

"Q I'm sorry; I didn't—

"THE COURT: Ask the question again.

"BY ATTORNEY CAPDEVILLE:

"Q Did Dove [Joseph] tell you anything after it was over?

"A Yes.

"Q What did he tell you?

"A [Inaudible.]

"Q Will you repeat that a little bit?

"A Don't tell anybody.

"Q Now, when this happened, where was your mommy?

"A At work.

"Q And were any of your sisters at home?

"A Yes.

"Q And what were they doing?

"A Watching TV and playing.

"Q And do you remember telling your mommy that it happened on a Sunday?

"You don't remember telling them that.

"Now had Dove [Joseph] troubled you before?

"Had he ever messed with you before?

"That was the first time?

"There was another time?

"And do you remember telling the police what you told your mommy? Taisha?

"Do you remember telling the police what you told your mommy that—the policemen, the people in the blue suits and the hat?

"A A little.

"Q A little bit?

"Now, Taisha, other than Dove [Joseph] has anybody messed with you before?

"Could you look around and tell us if you see Dove [Joseph] in the courtroom today?

"Do you see him?

"Where is he seated?

"A [Indicating.]

"Q Just tell us what he's wearing. What color shirt is he wearing?

"A Black.

"ATTORNEY CAPDEVILLE: Your Honor, could the record reflect she's identified the defendant?

"THE COURT: It may so reflect.

"BY ATTORNEY CAPDEVILLE:

"Q When he troubled you that time and you told your mother about it, was that before or after your birthday?

"A Before.

"Q Before your birthday.

"ATTORNEY BRYANT: Objection, Your Honor. We don't even know what birthday we're talking about.

"THE COURT: She said June 24th, I believe.

"ATTORNEY BRYANT: Okay. We don't know what birthday; this birthday, the last birthday.

"THE COURT: Sustained on that.

"BY ATTORNEY CAPDEVILLE:

"Q Which birthday, Taisha?

"A I don't remember.

"Q You don't remember?

"Was it last year?

"A Um-hum.

"ATTORNEY CAPDEVILLE: No further questions at this time.

Transcript at 51–55.

This testimony constitutes the entirety of any evidence, offered by Taisha Joseph, with respect to the alleged rape charged in Count I. As the defendant Joseph argued, the imprecise question—"when he troubled you that time and you told your mother about it, was that before or after your birthday"—, as well as Taisha's answer ("before"), do nothing to establish that the offense charged in Count I occurred in May or June 1983. Taisha's testimony, given during the trial which took place in late July and early August 1984, does not reveal whether Taisha was referring to her birthday in 1983 or 1984. If Taisha had been referring to her June 1984 birthday, the inference to be drawn would be that this testimony related to the rape which allegedly took place in October 1983—the subject of Count II. If, however, Taisha had been referring to her June 1983 birthday, the inference to be drawn would be that the testimony related to the rape which allegedly took place in May or June 1983—the subject of Count I. The imprecision of the "birthday question" and the implicit ambiguity of Taisha's answer assume great significance, since the record contains no other evidence differentiating between the offenses charged in Count I (May or June 1983) and Count II (October 1983).[5]

## B.

Rhonda Joseph, Taisha's six-year-old half sister, testified that she saw Joseph take Taisha into the bedroom and close the door.[6] However, the critical time to which Rhonda's testimony refers is also imprecise, being defined solely as "sometime last year" by the government. *See supra* at note 6.

Specifically, the government asked: "Do you remember sometime last year telling your mommy that you saw somebody take Taisha into the bedroom and close the door?" Transcript at 64. Like Taisha's testimony, Rhonda's ensuing recollection of events transpiring "sometime last year" fails to differentiate between the May or June 1983 and the October 1983 occurrences. Indeed, additional testimony elicited from Rhonda to the effect that she was at home and watching television with her sisters at the time it is charged that Joseph raped Taisha coincides with Taisha's de-

---

5. As we elaborate in text, *infra*, this crucial defect in the evidence, i.e. that no evidence was supplied which was clearly directed to the offense charged in Count I, was not cured by the testimony of either Rhonda Joseph or Jacqueline Joseph, who each testified as part of the government's case in chief.

6. Rhonda Joseph testified generally as follows:
   I just want to ask you one or two questions, Rhonda.
   Do you remember sometime last year telling your mommy that you saw somebody take Taisha into the bedroom and close the door?
   A [Inaudible].
   Q I'm sorry; I didn't hear you.
   A No.
   Q Do you remember that?
   A Yes.
   Q And was that true?
   A Yeah.
   Q And who did you see take Taisha into the bedroom? Who? What's his name?
   A Dove [Joseph].
   Q Dove [Joseph]?
   And when they went into the bedroom was the door opened or closed?
   Did you answer?
   A Yes.
   Q Was the door opened or was it closed when they went into the bedroom?
   A Closed.
   Q And do you remember whether or not there is a curtain in your house?
   A Yes.
   Q And when you saw Taisha and Dove [Joseph] go into the bedroom, did you go to the curtain to see?
   A No.
   Q You didn't go to the—okay.
   But did you hear anything?
   What did you hear? What kind of sound did you hear?
   Don't be afraid.
   Did you hear something—some noises? Did you hear a sound?
   A Yes.
   Q What kind of sound did you hear?
   A A door.
   Q The door is closed?
   Transcript at 64–66.

scription of the circumstances of the October 1983 incident.[7]

### C.

Jacqueline Joseph, Taisha's mother, also testified that on October 25, 1983, she noticed that Taisha was having abnormal vaginal discharges. *See* Transcript at 73. Accordingly, she sought medical treatment for Taisha and was advised that the child had been sexually abused. Mrs. Joseph then asked her daughter whether anyone had molested her, whereupon Taisha admitted that Joseph had abused her the prior Sunday, October 23, 1983. *See* Transcript at 75.

Mrs. Joseph further testified that she had had a conversation with her daughter, Rhonda, who told her that Joseph had taken Taisha into the bedroom. In particular, Mrs. Joseph testified that Rhonda stated: "Mommy, you know daddy called Taisha in the room and did freshness to her?" Transcript at 78. The record is not clear as to whether this conversation took place in 1983 or 1984, *see* Transcript at 78 (1984 attribution); transcript at 81 (1983 attribution), although Mrs. Joseph sought to identify the conversation as having occurred prior to July 1983, a month in which she vacationed in New York. Rhonda herself could not remember having had such a conversation with her mother. *See* Transcript at 64. Moreover, Mrs. Joseph further testified that when she confronted Taisha with Rhonda's statement, Taisha said her sister was lying. *See* Transcript at 79.

█ Even given the limited scope of this court's review—the strictures that this court is not to assess credibility or weigh evidence, but rather must view the evidence in the light most favorable to the government, *see Glasser v. United States*, 315 U.S. at 80, 62 S.Ct. at 469—the record evidence is insufficient to have enabled a rational trier of fact to have concluded beyond a reasonable doubt that Joseph raped Taisha Joseph in May or June of 1983. Indeed, when the government was asked at oral argument to identify that portion of the trial record containing evidence sufficient to sustain Joseph's conviction on Count I, it was unable to point to any evidence which could support the jury's verdict.

On the basis of the record evidence before us and viewing that evidence in the light most favorable to the government, we hold that the evidence was insufficient to sustain a judgment of conviction on Count I. We therefore direct that a judgment of acquittal be entered on that Count.

### III.

We must next decide whether comments made by the prosecutor during closing argument constitute reversible error, such that the grant of a new trial on the surviving count of the information would be justified. Joseph contends that the prosecutor's remarks were sufficiently prejudicial to vitiate the fairness of the trial process and the jury's verdict. Specifically, Joseph argues that: (1) the prosecutor improperly attacked Joseph's credibility; (2) the prosecutor improperly attacked the conduct of Joseph's counsel; and (3) the prosecutor improperly referred to the poverty of Taisha Joseph's home.

█ At the outset, we note that Joseph's counsel specifically objected to the prosecutor's comments on his trial conduct, *see* Transcript at 218–19, and took a general objection by moving for a mistrial at the close of the summation. *See* Transcript at 223–24. The question of prosecutorial misconduct is thus preserved for our appellate review.

We begin by reiterating a point that we have been required to emphasize in the past:

A United States Attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the

---

7. In relating the event of October 1983, Taisha Joseph testified that her sisters were at home and watching television when Joseph troubled her. *See* text *supra.*

United States and he must exercise that responsibility with the circumspection and dignity the occasion calls for.

*United States v. Kravitz,* 281 F.2d 581, 587 (3d Cir.1960), *cert. denied,* 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961); *accord United States v. Somers,* 496 F.2d 723, 736 (3d Cir.) *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States v. LeFevre,* 483 F.2d 477, 478 (3d Cir.1973). As we stated in *United States v. Somers,* 496 F.2d at 736, if we were sitting as a purely disciplinary body, we might well consider reversing any conviction in which prosecutorial misconduct was evident. However, we must also consider the practicalities of judicial administration which preclude us from reversing a jury verdict every time our attention is called to alleged adversarial improperties. "Given our primary concern with the fairness of the procedure, we will reverse upon demonstrations of prosecutorial misconduct only in those situations in which prejudice inures to the defendant from the challenged improprieties." *Somers,* 496 F.2d at 737.

In delivering his summation, the prosecutor here commented upon Joseph's veracity. He stated:

I submit to you that his story is absolutely ridiculous and I submit to you its [sic] incredible, and I believe the only thing that you can reasonably believe from what this man testified to on the stand is that his name is Emmanuel Joseph. Everything else is a lie.

Transcript at 215–16.

In *United States v. LeFevre,* 483 F.2d at 479, this court adopted Standard 5.8(b) of the ABA Prosecution Standards, governing the propriety of prosecutorial conduct. That standard provides:

It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant.

Standards Relating to the Prosecution Function § 3–5.8(b) (1979); *see also* Model Code of Professional Responsibility DR7–102(A)(5), DR7–106(C)(3), (4) (1980). The

*LeFevre* court, however, concluded that comments made by a prosecutor during summation did not constitute reversible error when the remarks referred only to "belief based on the evidence and not to an opinion formed from facts not in evidence." 483 F.2d at 479, quoting *United States v. Schartner,* 426 F.2d 470, 477 (3d Cir.1970). The *LeFevre* court went on to state that in light of the considerable evidence supporting the conviction, the prosecutor's comments were not unduly prejudicial.

In the present case, the prosecutor's comment was by definition confined to the evidence of record, since it was a generalized attack upon Joseph's credibility. The pertinent inquiry thus becomes whether in light of the evidence supporting Joseph's conviction on Count II, the challenged statement occasioned prejudice to Joseph sufficient to warrant reversal. *See United States v. Gallagher,* 576 F.2d 1028, 1042 (3d Cir.1978), *cert. dismissed,* 444 U.S. 1040, 100 S.Ct. 713, 62 L.Ed.2d 675 (1980); *United States v. Homer,* 545 F.2d 864, 868 (3d Cir.1976). In contrast to the proofs attributable to Count I, we note that the proof of Joseph's guilt with respect to Count II was ample. Taisha Joseph herself testified as to the sexual advances made by Joseph in October 1983. In addition, Jacqueline Joseph testified to Taisha's corroborative statement that Joseph had molested Taisha on October 23, 1983.

■ Moreover, even if we assume some prejudice resulted from the prosecutor's comment, the court in its charge to the jury gave a limiting instruction stating that "[t]he arguments of the attorneys and their questions are not evidence." Transcript at 229. The court thereafter further admonished the jury that they were to reach their decision without resort to "any sympathy or bias or prejudice." Transcript at 237. Under the circumstances and in light of the strong evidence of guilt with regard to Count II, we believe these instructions adequately cured any prejudice that may have arisen. *Cf. Gallagher,* 576 F.2d at 1042 ("prejudice can be cured by an appropriate instruction by the trial judge or by a find-

ing that there is overwhelming evidence to support the conviction.") Thus, we conclude that the prosecutor's comment on Joseph's veracity did not constitute reversible error.

■ Nor can we conclude that the prosecutor's remarks about Joseph's counsel[8] and about Taisha's poverty[9] constituted reversible error. The prejudice, which may inure to a defendant as a result of allegedly improper comments made during the government's closing argument, must be evaluated in light of that closing argument as a whole. *See Homer,* 545 F.2d at 868; *Somers,* 496 F.2d at 742. We necessarily consider both the individual and combined effect of any challenged comments.[10] *See Somers, supra; see generally United States v. Modica,* 663 F.2d 1173, 1178–86 (2d Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed. 1284 (1982). If our review of the record convinces us that the jury would have convicted the defendant even had it not been exposed to the allegedly improper prosecutorial comments, we must conclude that no actual prejudice accrued. *See United States v. Swinehart,*

8. The substance of the prosecutor's remarks about Joseph's counsel, Mr. Bryant, was:

> And it's also interesting, Mr. Bryant, when he had little Rhonda on the stand, he came up to the microphone and says, "Hello, Rhonda, I'm Brit Bryant, and I'm here to help your daddy...." If you think that's bad, he says, "Did the grandmother tell you what to say?", and I go up to her and say, "Is this the truth about seeing what she saw under that door?", and she said, "Yes." Fine; Mr. Bryant didn't attack that anymore, but its important there's one person he didn't play that game with. He didn't say that to Taisha; did he? He felt scared what Taisha would say to him because she would come back and say, "Nothing, I say is a lie." He knew who he was picking on. And talk about spoon-feeding, that's exactly what he did to Rhonda, spoon-feeding up there. But I ask you to ask yourselves this question: This whole process, the jury, the judge, the prosecutor, the defense counsel, everybody, it's all a matter of a search for truth, and I submit to you there are those in this courtroom, who, all they want to do to you is give you a doubt; that's all. Don't worry about what the kid said, I just want to give you a doubt. There's no doctor. I want to give you a doubt. The defendant gets on the stand and says, "My three kids and wife all tell lies." Just give you all a little doubt.

> Transcript at 218–20.

9. The comment on Taisha Joseph's poverty stated:

> You say where she lives, she's a poor child; G_d only knows what her future is like. She's not [Governor] Juan Luis' daughter, any of your daughters, or kids or grandchildren. She's a child who perhaps is not supervised as close as we would like to have her supervised by her mother. She, perhaps, is not supervised 24 hours like Juan Luis' daughter.

> Transcript at 221.

10. Joseph's brief before us relies upon *Draper v. Airco,* 580 F.2d 91 (3d Cir.1978), a case wherein the cumulative effect of improper comments during summation resulted in reversal of a jury verdict in favor of the plaintiffs. Joseph's reliance undoubtedly stems from a superficial similarity between the challenged conduct in *Draper* and that in the instant appeal, since in each case, an attack was made upon the conduct of defendant's counsel.

*Draper,* a civil case, involved a wrongful death action brought against several large corporate defendants. Plaintiff's counsel repeatedly breached the rules of proper closing argument by 1) attempting to prejudice the jurors through repeated references to the defendants' wealth; 2) asserting his opinion as to the justness of his client's cause; 3) referring to facts not in evidence; and 4) making vituperative and insulting references to opposing counsel. The *Draper* court, referring to the argument as a whole and the combined effect of counsel's numerous breaches, concluded that the summation was addressed solely to the prejudices of the jury and therefore reversed the jury's verdict.

The resemblence between *Draper* and the present case remains superficial. As we have previously stated, the prosecutor's challenged comments here did not refer to facts not in evidence; rather, they were based on evidence of record. In contrast to the *ad hominem* attacks launched against defendants' counsel in *Draper,* the prosecutor's comments here were general comments addressed to the nature of defense counsel's cross-examination. *See supra* at note 8.

Nor can any reference to Taisha Joseph's poverty be deemed prejudicial. Unlike *Draper,* where a jury's determination of liability might well have been influenced by considerations of numerous references to the defendants' wealth, such considerations are irrelevant to the determination of criminal, rather than civil, liability. Indeed, the reference to Taisha's poverty cannot be deemed anything other than irrelevant, since, unlike *Draper,* where the argument suggested that a verdict should be founded on the parties' financial disparity. Taisha's poverty was shared by her stepfather, Joseph.

617 F.2d 336, 340 (3d Cir.1980); *cf., Brooks v. Kemp*, 762 F.2d 1383, 1398–1403 (11th Cir.1985) (en banc) (on petition for writ of habeas corpus, petitioner must show that there is a reasonable possibility that, but for the prosecutor's allegedly improper comments, the result of the proceeding would have been different.)

Our review of the entire record [11] in this case satisfies us that the comments here, although ill-advised, cannot be said to so pervade the entire argument as to render the verdict a product of prejudice. The challenged remarks occupy approximately five paragraphs in a fourteen page summation. As such, they are hardly "cumulative evidence of a proceeding dominated by passion and prejudice." *Modica*, 663 F.2d at 1181, *quoting United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240, 60 S.Ct. 811, 852, 852, 84 L.Ed. 1129 (1940). Although we believe the prosecutor's comments were ill-chosen, we cannot conclude that they so exceeded the permissible bounds of advocacy as to require a reversal of Joseph's conviction.

The Supreme Court has recently reiterated the importance of the harmless error doctrine in determining the consequences of prosecutorial misconduct. *See United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *see also United States v. DiPasquale*, 740 F.2d 1282, 1296 (3d Cir.1984). In *Hasting*, the Court held that in certain circumstances, even constitutional challenges to the propriety of a prosecutor's remarks during summation must be assessed on the basis of the record as a whole in order to determine whether the asserted error was harmless beyond a reasonable doubt.

■ Applying that standard to the instant case, we conclude that even assuming *arguendo* that the prosecutor's comments were in error, they were harmless. We decide only that in light of the substantial evidence of guilt established in relation to Count II and in light of the curative in-structions given the jury, the prosecutor's remarks, considered both individually and in their combined effect, did not prejudice Joseph. Accordingly, we hold that reversal of the judgment of conviction on Count II is not warranted.

**IV.**

The district court sentenced Joseph to a 12 year term of imprisonment without apportioning his sentence between Counts I and II. The order of judgment and commitment states in pertinent part:

The defendant was charged with:

RAPE FIRST DEGREE–2 Counts

At arraignment, the defendant pleaded Not Guilty. A jury trial was demanded by the defendant and on August 1, 1984, the jury trial commenced and concluded on August 2, 1984. The jury returned a verdict finding the defendant Guilty of

RAPE FIRST DEGREE–2 Counts

. . . . .

It is ADJUDGED that the defendant is hereby committed to the custody of the Director of the Bureau of Corrections or his authorized representative for imprisonment for a period of twelve (12) years.

Because the district court prescribed a general sentence which embraced both Counts, we do not know the sentence which the district court would have imposed on Joseph had Joseph been convicted of just Count II. In light of our reversal of Joseph's conviction on Count I, it is apparent that we must remand this matter to the district court so that Joseph may be resentenced on Count II only. We express no opinion as to the sentence which the district court judge in his sole discretion may choose to impose with respect to Count II.

**V.**

In sum, we hold that there was insufficient evidence to sustain Joseph's conviction on Count I of the information. We further hold that no prejudice, sufficient to

11. The initial submissions by the parties did not contain a transcript of the entire summation. After oral argument, and pursuant to our re-quest, we were furnished with the transcript of the summation, the challenged portions of which appear here in text and footnotes.

warrant the grant of a new trial on the surviving Count II, resulted from the remarks made by the prosecutor during summation.

We therefore will reverse Joseph's conviction on Count I and direct that the district court enter a judgment of acquittal as to that count only. We will affirm Joseph's conviction on Count II and we will remand to the district court so that Joseph may be resentenced on Count II consistent with the foregoing opinion.