

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2005

# USA v. Ordaz

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3671

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Ordaz" (2005). *2005 Decisions*. Paper 1566.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1566

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 03-3671

_____

UNITED STATES OF AMERICA

v.

BERTO ORDAZ, a/k/a Popi

Berto Ordaz,
Appellant

_____

On Appeal From the United States
District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action No. 98-cr-00587-18)
District Judge: Hon. Anita B. Brody

_____

Argued October 4, 2004

BEFORE: SLOVITER, BECKER and STAPLETON, <u>Circuit Judges</u>

(Opinion Filed    January 14, 2005           )

_____

Richard S. Packel (Argued)
27 East Front Street - 2nd Floor
Media, PA  19063
 Attorney for Appellant

Patrick L. Meehan
U.S. Attorney
Laurie Magid
Deputy U.S. Attorney
Robert A. Zaumer
Assistant U.S. Attorney
Kathy A. Stark (Argued)
Assistant U.S. Attorney
Office of the U.S. Attorney
615 Chestnut Street
Philadelphia, PA  19106

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

Because we write only for the parties who are familiar with the facts, we do not restate them below.  In 1999, a jury sitting in the United States District Court for the Eastern District of Pennsylvania returned a verdict against Appellant Berto Ordaz, finding him guilty of two counts of a Superseding Indictment: Count 1 – conspiracy to distribute cocaine, and Count 47 – use of a telephone on May 23, 1998, in furtherance of a drug offense.  For the purposes of establishing Appellant's offense level under the United States Sentencing Guidelines (the "Guidelines"), the Court attributed the amount of 56 kilograms of cocaine to Appellant.  In addition, the Court determined that Appellant was not entitled to a mitigating factor sentence reduction under the Guidelines for playing a "minor" or "minimal" role in the conspiracy.  The Court sentenced Appellant to a term of

240 months of imprisonment on Count 1 and a consecutive term of 30 months of imprisonment on Count 47, for a total term of imprisonment of 270 months.[1] Appellant appeals both his conviction and sentence. For the reasons set forth below, we will reverse in part and affirm in part.

## I. Convictions

We turn first to Appellant's challenge to his convictions. First, Appellant objects to the District Court's decision to admit into evidence certain testimony about statements which it found to be made by co-conspirators of Appellant "during the course of and in furtherance of that conspiracy." Fed. R. Evid. 801(d)(2)(E); *United States v. McGlory*, 968 F.2d 309, 333-34 (3d Cir. 1992). Appellant insists that this testimony contributed to his conviction on Count 1. We review the District Court's decision to admit or exclude evidence for abuse of discretion. *United States v. Versaint*, 849 F.2d 827, 831 (3d Cir. 1988); *United States v. Tyler*, 281 F.3d 84, 98 (3d Cir. 2002).

We are satisfied that we do not need to address Appellant's specific objections to any particular co-conspirator statements,[2] because we conclude that even if the Court's

---

[1] Although the Sentencing Guidelines called for a sentence on Count 1 ranging from 262 to 327 months, the Court imposed the lower sentence of 240 months on that count because the jury had not been questioned about the amount of cocaine attributable to Appellant, as the case was tried prior to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[2] We understand Appellant to be challenging the admission of six statements. In each instance, the witness, who was a member of the conspiracy, testified as to what another member told him or her about Appellant's involvement in the conspiracy. Appellant does not contend that there was insufficient evidence to support a finding that the conspiracy existed and that the speaker and hearer were members thereof. Appellant insists,

3

decision to admit those statements was error, such error was harmless. A harmless error is one that beyond a reasonable doubt did not contribute to the verdict – *i.e.*, an occurrence that is "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt*, 500 U.S. 391, 403 (1991) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). To reach this conclusion, we consider other evidence presented in the case in addition to the testimony at issue. *United States v. Emanuele*, 51 F.3d 1123, 1131-32 (3d Cir. 1995) (citing *United States v. Brathwaite*, 432 U.S. 98, 118 (1977) (Stevens, J. concurring)).

In this case, the record contains overwhelming evidence of Appellant's participation in the drug conspiracy run by Lazara Ordaz (the "Ordaz Organization"). The government presented comprehensive evidence establishing that the Ordaz Organization conducted drug sales in the vicinity of 8th and Tioga Streets in North Philadelphia from 1993 through October of 1998; that it obtained cocaine from a number of sources, but primarily in Miami, one or more times per month; and that it ultimately sold the cocaine in smaller quantities. The government also presented testimony from witnesses to establish that – from approximately December of 1993 to January of 1996 – Appellant was the courier who drove to Miami to obtain the cocaine, and who then

---

however, that the statements were not shown to have been made in furtherance of the conspiracy. By the time this objection was first raised at trial (App. at 142), three of the now challenged statements had been admitted without such an objection having been made and the remaining three do not add materially to the content of those that went in without objection. We need not rest our holding on this point, however, because the other record evidence clearly establishes Appellant's role in the conspiracy.

4

brought the cocaine back to the Ordaz Organization for processing and sale. Indeed, the government offered direct eyewitness testimony as to Appellant's personal delivery of cocaine to Ordaz Organization members. *See, e.g.*, App. at 201-205. We therefore conclude that the total weight of the evidence against Appellant makes any potential error in the admission of the co-conspirator statements at issue harmless, and we will affirm Appellant's conviction on Count 1.

Second, Appellant also challenges his conviction on Count 47, arguing there was insufficient evidence to support a jury verdict of guilty beyond a reasonable doubt. We review a jury verdict in the light most favorable to the government to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). If there was sufficient evidence for any rational jury to find Appellant guilty on Count 47 beyond a reasonable doubt, we must affirm. *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996), *cert. denied*, 519 U.S. 1047 (1996) (citations omitted).

A defendant may violate 21 U.S.C. § 843 (b) by making telephone calls to facilitate a conspiracy. *See United States v. Theodoropoulos*, 866 F.2d 587, 594-95 (3d Cir. 1989). Count 1 of the Superseding Indictment alleged a conspiracy between the members of the Ordaz Organization to distribute cocaine in Philadelphia, Pennsylvania. Count 47 alleged use of a telephone to facilitate the specific conspiracy alleged in Count 1, in violation of 21 U.S.C. § 843(b). The telephone call at issue occurred on May 23,

1998, between Appellant and both Pablo Rodriguez and Lazara Ordaz.[3] In order to convict Appellant on Count 47, the jury must have been able to conclude beyond a reasonable doubt that the May 28, 1998 telephone call facilitated the specific Ordaz Organization drug distribution conspiracy charged in Count 1.

We conclude that the evidence of the May 28, 1998 telephone call is fundamentally insufficient to establish that Appellant used that specific call to facilitate the conspiracy charged in Count 1. Appellant was incarcerated at the time of the call and was no longer an active courier in the Ordaz Organization. At no time during the call did any participant explicitly reference the drug distribution activities of the Ordaz Organization. To the contrary, the only explicit references to drugs were part of a discussion regarding the delivery of drugs to Appellant in prison and Appellant's personal use of drugs while incarcerated. Since an essential element of a violation of 21 U.S.C. § 843(b) is facilitation of the drug conspiracy, the discussion of Appellant's personal drug use is irrelevant to Count 47. Putting that aside, the jury was left to consider only a highly ambiguous, subsequent portion of the telephone call in which Appellant made the statements "when that moved that – that when Papito tells me that he's ready, I tell him to get you, Lazara" and "In case of any moves, you understand?" App. at 94. These statements simply did not include enough information for a rational jury to conclude that Appellant was using the telephone call to facilitate the ongoing distribution of cocaine (as

---

[3] Lazara Ordaz was Appellant's sister and the leader of the Ordaz Organization. Pablo Rodriguez was Appellant's friend and a supervisor in the Ordaz Organization.

opposed to facilitating delivery of drugs to himself in prison or any other possible non-drug related purpose). Indeed, the government failed to even identify the person referenced as "Papito," or establish that he/she was in any way connected to activities of the Ordaz Organization. The transcript of the telephone call is bereft of any evidence to support the conclusion that Appellant used that telephone call to facilitate the ongoing distribution of cocaine in Philadelphia.[4] Based on this record, we believe that any such conclusion could only be mere speculation.

Because we conclude that the evidence presented was fundamentally insufficient for any rational jury to find the essential elements of the crime charged in Count 47 beyond a reasonable doubt, we will reverse Appellant's conviction on Count 47 and vacate that portion of Appellant's sentence.

## II. Sentence

Appellant also challenges his sentence. First, Appellant argues that the District Court erred by not granting him a reduction in his base offense level under the Guidelines. We review the District Court's factual determination concerning whether Appellant's role in the conspiracy qualifies him for an offense level reduction under

---

[4] While it is true that during the call Appellant also asked for Lazara Ordaz's beeper number, and in response Lazara Ordaz provided Appellant with four numbers, including those of her own beeper and cellular phone, the home number of Miguel Morales (an Ordaz Organization conspirator), and the number of a pay phone routinely used by members of the Ordaz Organization, here also there is no evidence to link that exchange to the Ordaz Organization conspiracy alleged in Count 1.

7

Guidelines § 3B1.2 for clear error.[5] *United States v. Ortiz*, 878 F.2d 125, 126-27 (3d Cir. 1989).

District Courts have broad discretion in applying Guidelines § 3B1.2 to cases involving drug couriers. *United States v. Isaza-Zapata*, 148 F.3d 236, 238-42 (3d Cir. 1998). A § 3B1.2 reduction is available for a defendant whose role in the offense makes him substantially less culpable than the average participant. *See Isaza-Zapata*, 148 F.3d at 238-39. In *United States v. Headley*, 923 F.2d 1079, 1084 (3d Cir. 1991), we noted that a determination as to whether a drug courier such as Appellant is a "minor"or "minimal" participant under § 3B1.2 includes consideration of "such factors as the nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise," and that the defendant's conduct should be examined in relation to the other participants. *Id.* (citations omitted)*; Isaza-Zapata*, 148 F.3d at 239 (citing *United States v. Bierley*, 922 F.2d 1061, 1065 (3d Cir. 1990)).

We are satisfied that the District Court's finding that Appellant was not entitled to a base offense level reduction for being a "minor" or "minimal" participant in the Ordaz

___

[5] Section 3B1.2 of the Guidelines provides:
Based on the defendant's role in the offense, decrease the offense level as follows:
   (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
   (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
   In cases falling between (a) and (b), decrease by 3 levels.

Organization conspiracy was not clearly erroneous. As the District Court noted, Appellant was "a courier again and again and again, to the extent that it might have been weekly." App. at 362(a). The substantial weight of the evidence established that Appellant's activities occurred not only frequently but also more often than other players in the conspiracy, and that Appellant knowingly played a crucial role in the conspiracy relative to others (*i.e.*, by obtaining the cocaine and transporting it to Philadelphia for packaging and sale). Appellant had a close relationship with the Ordaz Organization leadership and was fully aware of his important role in the organization's drug distribution business. Accordingly, we believe the District Court's conclusion that he "was a major part of this conspiracy, and no way was he considered a minor player" is supported by the substantial weight of the evidence. *Id.*; *accord United States v. Carr*, 25 F.3d 1194 (3d Cir. 1994). The District Court therefore did not commit clear error, and we will affirm.

Second, Appellant challenges the District Court's attribution of between 50 and 150 kilograms of cocaine to Appellant for purposes of computing his sentence under the Guidelines. We review the District Court's factual findings regarding the quantity of cocaine for sentencing purposes for clear error. *United States v. Yeung*, 241 F.3d 321, 322 (3d Cir. 2001) (citing *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir. 1993)). The District Court's determination need only be supported by a preponderance of evidence "with sufficient indicia of reliability to support its probable accuracy." *United*

9

*States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999) (*citing U.S. v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993)). Furthermore, we recognize that "a degree of estimation is sometimes necessary" because the covert nature of the drug trade precludes seizure and precise measurement of the drugs that flow through a drug distribution conspiracy. *Gibbs*, 190 F.3d at 203; *Paulino*, 996 F.2d at 1545. We have previously acknowledged that courts may estimate a drug quantity based on testimony by co-defendants about the weight of drugs transported by couriers, and on other testimony about the average amounts sold per day multiplied by a particular length of time. *See Gibbs* 190 F.3d at 204 (citing *United States v. Maggard*, 156 F.3d 843, 848 (8th Cir. 1998)).

We are satisfied that the District Court's determination regarding the quantity of cocaine distributed by the Ordaz Organization during the period of time in which Appellant was a courier is supported by a preponderance of the evidence. The weight of the evidence shows that Appellant participated in frequent trips to Miami, and direct witness testimony established the frequency and quantity of drug shipments handled by Appellant and other couriers. This evidence was bolstered by testimony about the quantity of cocaine actually sold by the Ordaz Organization after it took delivery from its couriers. In addition, Alcohol, Tobacco and Firearms Agent Tropea (a federal agent assigned to the long-term investigation of the Ordaz Organization) offered a cocaine quantity estimate based on multiple years of communications intercepts, witness interviews, and historical seizures. *See Gibbs*, *inter alia* (affirming a District Court's

finding as to drug quantity where the weight of the evidence was significantly less than in this case). Here, we conclude that the government's estimate was supported by a substantial amount of evidence bearing significant indicia of reliability to establish its probable accuracy. The District Court therefore did not commit clear error, and we will affirm.

## III. Conclusion

The judgment of the District Court with respect to Count 47 will be reversed. The remainder of that judgment will be affirmed.

SLOVITER, <u>Circuit Judge</u>, dissenting in part and concurring in part.

I join all of the majority's opinion except that portion of Section I of the opinion that reverses Berto Ordaz's conviction on Count 47, which charged use of a communication facility on May 23, 1998, in furtherance of a drug offense. I believe that the evidence adduced at trial adequately supports Ordaz's conviction under 21 U.S.C. § 843(b); therefore, I respectfully dissent from the majority's decision to the contrary.[6]

As the majority notes, there was overwhelming evidence that Berto Ordaz was a participant in the drug conspiracy run by his sister, Lazara Ordaz.[7] He was the courier who drove to Miami to obtain the cocaine which he then delivered to other members of the Ordaz Organization in Philadelphia, Pennsylvania. He was imprisoned in the

---

[6]In pertinent part, that statute provides:

> It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. . . . For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of . . . sounds . . . and includes . . . telephone[s] . . . .

21 U.S.C. § 843(b). This court, applying § 843(b)'s clear terms, has held that an individual violates the statute when s/he uses a telephone to further a narcotics conspiracy. <u>United States v. Zolicoffer</u>, 869 F.2d 771, 773 (3d Cir. 1989); <u>United States v. Pierorazio</u>, 578 F.2d 48, 51 (3d Cir. 1978).

[7] Lazara Ordaz is currently serving a term of 420 months of incarceration for her role in the conspiracy. <u>See</u> <u>United States v. Ordaz</u>, 111 Fed. Appx. 128, 130 (3d Cir. 2004).

12

Philadelphia Detention Center on May 23, 1998, the date of the phone conversation at issue. Ordaz participated in the call, which the United States intercepted by means of a lawful wiretap.

Obviously, once he was incarcerated, he could no longer fulfill his role as courier. However, this does not mean that his overall role or participation in the conspiracy was at an end. Rather, the decisional law is clear that a conspirator's arrest or incarceration alone does not necessarily signal the end of his participation in a conspiracy or his ability to further the conspiracy's ends. See United States v. Melton, 131 F.3d 1400, 1405 (10th Cir. 1997); United States v. Harris, 542 F.2d 1283, 1301 (7th Cir. 1976); United States v. Armocida, 515 F.2d 29, 47 (3d Cir. 1975). Thus, unlike the majority, I find nothing particularly telling in the fact that Ordaz was incarcerated at the time of the conversation.

Further, in reversing Ordaz's conviction, the majority focuses its attention solely on the May 23, 1998 conversation itself. Admittedly, the conversation was rather cryptic; standing alone, the conversation itself is likely insufficient evidence to support a finding of guilt. On the other hand, we held in United States v. Theodoropoulos, 866 F.2d 587, 595 (3d Cir. 1989), overruled in part on other grounds by United States v. Price, 76 F.3d 526, 528 (3d Cir. 1996), that the jury could have construed a somewhat cryptic telephone conversation "as reflecting part of the ongoing relationship [between two members of the drug organization] with respect to the sale of drugs and payment therefor."

In resolving a sufficiency of the evidence challenge, this court must consider the

13

record evidence as a whole--an appellate court faced with an insufficiency of the evidence challenge should not consider a subset of the evidence in isolation and untethered to the remainder of the record.  Gov't of Virgin Islands v. Joseph, 770 F.2d 343, 345 (3d Cir. 1985); accord United States v. Graves, 669 F.2d 964, 970 (5th Cir. 1982).  I believe the majority does just that.

Notably, the majority correctly finds that the record contains "overwhelming" evidence of Ordaz's participation in the narcotics conspiracy.  Due, however, to its erroneous reliance on the fact of Ordaz's incarceration, and its narrow approach to the evidence, the majority neglects to consider its earlier conclusion with regard to the May 23, 1998 conversation and the inferences reasonably drawn therefrom.

When Ordaz's conviction is considered in perspective of the entire record and in the light favorable to the United States, it is adequately supported.  Although--as concluded by the majority--some of the May 23 conversation may have related to Ordaz's attempts to obtain narcotics for personal use, the transcript, viewed in the United States' favor and taking all reasonable inferences therefrom, supports a finding that even in jail Ordaz was continuing to assist in the conspiracy.  During that conversation, Ordaz asked his sister to provide him with the telephone numbers of certain other members of the organization.  The jury may well have been skeptical of Ordaz's explanation that he sought the phone numbers so that he would have people to talk to during his incarceration in order to stem his boredom.  Perhaps most telling is that one of the phone numbers

Lazara provided to Ordaz during the call was that of a public payphone located in North Philadelphia--a payphone that the United States, through other evidence introduced at trial, had shown was virtually monopolized by members of the Ordaz Organization for their illicit trade.

During the May 23 call, Ordaz told his sister: "No, no, when that move, that, that, when Papito tells me that he's ready, I tell him to get you--Lazara, what's you beeper number, man?" App. at 379. Considering the record in toto, especially the evidence respecting Ordaz and Lazara's relationship and the important role Ordaz played in the narcotics enterprise, the jury could have reasonably understood this talk of a "move" to have referred to a drug shipment. Moreover, it was reasonable for the jury to conclude that Ordaz was ensuring that when "Papito" was ready with a "move" Ordaz was going to inform his sister and arrange things, thereby furthering the conspiracy. Indeed, later in the conversation, immediately after his sister had provided him with several telephone numbers, including her beeper number and the number of the North Philadelphia payphone, Ordaz restated the reason why he had asked her to provide these numbers: "Yeah, in case of any moves, you understand?," to which his sister immediately responded, "You call me." App. at 382.

In sum, when the record evidence is viewed as a whole and in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom, a rational trier of fact could have found Ordaz guilty beyond a reasonable

doubt.  <u>United States v. Augustin</u>, 376 F.3d 135, 138 (3d Cir. 2004); <u>Joseph</u>, 770 F.2d at 345.  Thus, I respectfully dissent from the majority's decision to reverse Ordaz's conviction under 21 U.S.C. § 843(b).