

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-18-2005

# USA v. Montero

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4213

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Montero" (2005). *2005 Decisions.* Paper 1561.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1561

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4213

UNITED STATES OF AMERICA

v.

CLAUDIO MONTERO,
Appellant

On Appeal from the District
of the Virgin Islands, Division
of St. Thomas and St. John
(D.C. Crim. No. 01-195)
Honorable Thomas K. Moore, District Judge

Argued December 16, 2004

BEFORE: SLOVITER, FUENTES and GREENBERG, Circuit Judges

(Filed: January 18, 2004)

Stephen A. Brusch, Esq. (argued)
No. 28-29 Norre Gade, Second Floor
P.O. Box 988
St. Thomas, U.S.V.I. 00804

        Attorney for Appellant

Anthony J. Jenkins, Esq.
Acting United States Attorney
Bruce Marshak, Esq. (argued)
Nelson L. Jones, Esq.

Assistant U. S. Attorney
United States Department of Justice
Office of the United States Attorney
5500 Veterans Drive, Suite 260
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00802-6424

      Attorneys for Appellee

---

OPINION OF THE COURT

---

GREENBERG, <u>Circuit</u> <u>Judge</u>.


I. FACTUAL AND PROCEDURAL HISTORY

This matter comes on before this court on appeal from a judgment of conviction and sentence entered in the District Court of the Virgin Islands on October 15, 2003, against Claudio Montero. The investigation which ultimately resulted in Montero's prosecution began in 1991 in Brooklyn, New York, with the Joint Organized Crime Task Force's investigation into the illegal distribution of narcotics by the Francisco Baez organization. Agents of the task force, pursuant to a court ordered wiretap, identified Antonio Marte (a/k/a "Pacheco") as Baez's supplier. Following this lead, agents using court authorized wiretaps found that Edwin Arturo Paillier was acting, in turn, as Marte's supplier. The agents then turned their attention to Paillier and obtained a court order to intercept his telephone conversations. These intercepts produced information that Paillier and his associates were transporting large quantities of cocaine from the island of St.

Maarten, through St. Thomas, Virgin Islands, with the ultimate destination being New York.

The agents, on May 5, 2001, intercepted a conversation between Paillier and Montero detailing how Paillier would send his "couriers" to Montero's premises, apparently a bar, whereby Montero would lead them to the Mafolie Hotel to see his "secretary." Montero also was instructed to stay with them "to make sure everything was ok." App. at 126. The couriers arrived at Montero's premises on May 8, 2001. He escorted them to the Mafolie Hotel and entered a room registered to Lucille Demaris, Paillier's girlfriend (a/k/a Miguelina). The agents ultimately arrested Montero, Demaris and the couriers and recovered 5.9 kilograms of cocaine base (commonly referred to as crack) and six kilograms of powder cocaine.

Montero and two co-defendants, Cesar A. Isasis and Anthony Wilkins, were indicted for conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 (count I), and possession with the intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(A)(ii)(II) (count II). In addition, Montero was indicted for use of a telephone to facilitate drug offenses, in violation of 21 U.S.C. § 843(b) (count III). Montero was tried to a jury beginning on December 16, 2002, and on December 18, 2002, was convicted on all counts. On October 15, 2003, the court sentenced Montero to 130 months incarceration on Counts I and II, and 48 months incarceration on Count III, with all

sentences to run concurrently. Montero filed a notice of appeal on October 21, 2003.

On this appeal Montero argues that we should reverse his conviction and dismiss the indictment against him because (1) there was insufficient evidence to support a jury finding that Montero knew that the persons with whom he was involved were engaged in a drug smuggling offense, and (2) the prosecutor, during rebuttal summation, "impermissibly made egregious" statements that denied him the right to a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution.

## II. JURISDICTION

The district court had subject matter jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231 and we have jurisdiction on the appeal pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

A. <u>Sufficiency of the Evidence</u>

We start our discussion by recognizing that "[t]he burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." <u>United States v. Serafini</u>, 233 F.3d 758, 770 (3d Cir. 1993). Thus, in reviewing a verdict for sufficiency of the evidence, "we determine whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to

4

convict." United States v. Helbling, 209 F.3d 226, 238 (3d Cir. 2000) (quoting

Government of the Virgin Islands v. Charles, 72 F.3d 401, 410 (3d Cir.1995)).

Accordingly, we "must consider the evidence in the light most favorable to the

government and affirm the judgment if there is substantial evidence from which any

rational trier of fact could find guilt beyond a reasonable doubt." United States v. Frorup,

963 F.2d 41, 42 (3d Cir. 1992); see Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct.

457, 469 (1942). Moreover, we review both direct and circumstantial evidence where

there is a dispute as to the sufficiency of the evidence. See United States v. Kapp, 781

F.2d 1008, 1010 (3d Cir. 1986).

Montero claims that evidence against him is "insufficient to support a reasonable

juror's finding that [he] knew that the object of the conspiracy was cocaine smuggling, or

that the accomplices were engaged in possession with intent to distribute cocaine."

Appellant's br. at 13. Montero's argument is that there simply was not enough evidence

offered by the prosecutor to prove that Montero knew that he was engaged in a drug deal.

Id. at 14. Montero claims that he "merely" believed he was engaged in a counterfeit

money scheme.[1] See app. at 420, 482-83.

We reject Montero's contention because we are satisfied that there was, in fact,

substantial evidence from which the jury could have found that Montero knew that the

illegal activity in which he was engaged was a drug smuggling offense, and therefore

---

[1]Montero testified that he was paid between $1,500 and $1,800 on each of three
separate occasions, to take counterfeit money to St. Maarten. See app. 420, 422-23.

there was substantial evidence from which the jury could have found Montero guilty beyond a reasonable doubt. First, Paillier testified that it was clear to him that Montero understood that he was partaking in a drug smuggling offense, Montero allowed Demaris to store drugs in Montero's bar, Montero helped secure the drugs while Pailler was locating people willing to transport the drugs, Montero knew that Demaris was storing drugs at the Mafolie hotel, and Montero facilitated the drug deal when he escorted the couriers to the hotel. See app. at 212-16, 256-58, 267-70, 272-75. Pailler also testified that after Demaris introduced him to Montero, but before the incident in the Mafolie hotel, Montero traveled to Miami were he was paid approximately $2,500 to $2,800 to take approximately $25,000 to $28,000 from Miami, Florida, to a man on the island of St. Maarten.[2] App 149-52. Pailler testified, "that money was destined to expenses related to the transportation of drugs." App. at 152.[3]

Second, Montero, upon his arrest told Special Agent Robert Lasky that he knew that Paillier and Demaris were drug dealers. App. at 380-81. Montero also stated that while he did not know about the couriers' destination after he transported them to the hotel, "he stated that he knew they were not going to church." Id. at 381.

---

[2]This evidence was offered as background to the introduction of the intercepted communications.

[3]Paillier did testify, however, that, "[Montero] probably didn't know the purpose himself" for delivery of the money to Miami. App. at 152. Later in Paillier's testimony, though, he noted that Miguelina "having spoken to [Montero] several times, must have tell [sic] him that's what they were." App. at 256. And, "Don't worry, he's like my brother. He knows everything." Id. at 257.

Third, it is entirely possible that the jury weighed Montero's claim that he did not know that he was involved in an illicit drug deal and found him, and this assertion, to be entirely lacking credibility. To lend legitimacy to Montero's defense that he believed he merely was engaged in counterfeiting, his attorney attempted to elicit testimony from him that smuggling counterfeit money was a crime, and that therefore Montero was a criminal. Montero, however, refused to even concede this point. App. at 421-26. It was not unlikely that, given his unwillingness to capitulate on even this point, Montero lost all credibility with the jury, and the jury therefore was unwilling to believe his claim that he was unaware he was involved in a drug ring.

In sum, when the evidence is viewed in a light most favorable to the government, a rational trier of fact clearly could have chosen to convict Montero. Montero knew that he was engaged in an illegal operation with known drug dealers, his co-conspirator testified that he believed Montero knew that he was part of a drug smuggling operation, and Montero's claims of ignorance justifiably could be treated skeptically given his lack of credibility. There is clearly substantial evidence in the record from which the jury could have found Montero guilty beyond a reasonable doubt.

_____

B. Prosecutorial Misconduct

We review a district court's denial of a motion for mistrial arising out of alleged prosecutorial misconduct for abuse of discretion in light of the entire trial record. United

7

States v. Gambino, 926 F.2d 1355, 1365 (3d Cir. 1991); United States v. Tyler, 878 F.2d 753, 761 (3d Cir. 1989). We will reverse a defendant's conviction if "the prosecutor's remarks, taken in the context of the trial as a whole, were sufficiently prejudicial to have deprived [the defendant of his] right to a fair trial." United States v. DiPasquale, 740 F.2d 1282, 1297 (3d Cir. 1984). We therefore must consider the probable effect the prosecutor's rebuttal would have on the jury's ability to judge the evidence fairly. See Lawn v. United States, 355 U.S. 339, 359 n.15, 78 S.Ct. 311, 323 n.15 (1958).

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044 (1985). Therefore, the defense counsel's conduct, as well as the nature of the prosecutor's response, is relevant. Id. Accordingly, we must examine the prosecutor's comments within the context of the trial to determine whether his behavior was unfairly prejudicial. Lawn, 355 U.S. at 359 n.15, 78 S.Ct. at 323 n.15; see Young, 470 U.S. at 12; 105 S.Ct. at 1044.

In making our determination we recognize that Montero contends that "the prosecutor relentlessly and impermissibly engaged in egregious misconduct during rebuttal summation" and therefore "denied Montero his right to a fair trial." Appellant's

br. at 15.[4]

A fair reading of the prosecutor's remarks leads us to conclude that "the prosecution was only meeting the defense on a level of the defense's own choosing." United States v. LaSorsa, 480 F.2d 522, 526 (2d Cir. 1973). The defense counsel, over the entirety of his case, made numerous inflammatory and questionable assertions. For

___

[4]Montero's brief sets forth the prosecutor's closing argument nearly verbatim. Nevertheless inasmuch as we write for the parties we will include only those statements that are most questionable:

> 2. These are drugs that Claudio Montero was helping to put on the streets in this country, and God knows who would have been the one ended with this junk in their body

App. at 511-12.

> 4. [Montero's lawyer] knew that if he called Lucy Demaris to the stand, that in order for Lucy Demaris to say that Claudio didn't know anything about it, she would have had to do exactly what he did yesterday, take that stand and lie, lie, lie.
>
> That is what she would have to do. If he had called Lucy Demaris, Lucy Demaris, if she told the truth, if she told the truth, as she would have been sworn to tell the truth, would have said this: I told Claudio Montero that the money was for drugs. Claudio Montero saw the drugs. Claudio Montero helped with the drugs. Claudio Montero is guilty. That's what she would have said.

Id. at 510-11.

> Why would Agent Lasky take the stand and raise his hand and run the risk of his career, run the risk of committing perjury to lie on Claudio? Why? It don't [sic] make sense.

Id. at 529.

9

example, he claimed that Agent Lasky was lying under oath when the agent testified that Monetero told him shortly after his arrest that he knew Paillier and Demaris were drug dealers, see app. at 419-20; defense counsel insinuated that the only way for the prosecutor to prove beyond a reasonable doubt that Montero knew that he was involved in a drug deal was to have called Demaris to the stand, see app. at 492; and defense counsel put forth incomplete portions of Pailler's testimony in an attempt to demonstrate Montero's unawareness of the drug component of the crime, see app. at 512. While the prosecutor's response to these improprieties was vigorous, we note that such action was taken in a defensive response rather than in an affirmative attack upon Montero. See United States v. Pungitore, 910 F.2d 1084, 1126 (3d Cir. 1990).

After considering all the circumstances, we will not hold that the prosecutor's remarks were unfairly prejudicial. The evidence demonstrating Montero's involvement in illegally distributing narcotics, as well as conspiring to distribute illegal narcotics was substantial. The prosecutor was able to offer intercepted telephone conversations documenting Montero's role in the drug smuggling ring and also presented testimony from one of the co-conspirators linking Montero to the crime. Furthermore, there was physical evidence documenting Montero's role in the drug operation. Given the weight of this evidence, we cannot hold that the prosecutor's rebuttal statements unfairly prejudiced Montero by unduly influencing the jury in their decision to convict. See Government of the Virgin Islands v. Joseph, 770 F.2d 343, 351 (3d Cir. 1985) (holding

10

improper summation remarks attacking defendant and defense counsel's credibility should not result in mistrial in light of the substantial evidence of defendant's guilt).

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of conviction and sentence of October 15, 2003.

———