**UNITED STATES of America**

v.

**VERSAINT, Cherubin, Appellant.**

**No. 87–3628.**

United States Court of Appeals,
Third Circuit.

Argued March 3, 1988.
Decided June 21, 1988.

Thomas C. Grimm (argued), Morris, Nichols, Arsht and Tunnell, Wilmington, Del., for appellant.

William C. Carpenter, U.S. Atty., Charlene D. Davis (argued), Asst. U.S. Atty., Wilmington, Del., for appellee.

Before SEITZ, HIGGINBOTHAM and COWEN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Following a seven day jury trial, a federal jury found Cherubin Versaint guilty of possession and distribution of cocaine in violation of 21 U.S.C. § 841 (1982), and of conspiracy to distribute and possess cocaine in violation of 21 U.S.C. § 846 (1982). On this appeal, Versaint contends that the district court abused its discretion by refusing to admit into evidence a police report proffered by the defense as substantive evidence of misidentification. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We will vacate the judgment and sentence[1] of the district court and remand this case for a new trial.

## I. FACTS

The relevant facts are undisputed. In the early morning hours of February 20, 1987, the Delaware State Police executed a "no knock" search warrant on a Seaford Delaware mobile home. Joint Appendix (hereinafter "Jt. App.") at 58, 267–68. The search warrant was based on a Delaware State Police investigation into a suspected crack cocaine distribution operation run from the home by its occupants. The investigation, which began in October 1986, included police surveillance of the home and a series of undercover visits there by Trooper Downes, a Delaware State Police officer. *Id.* at 284–88. During the search, the police discovered two guns and three pounds of cocaine, of which some was concealed under a bed and the rest buried in the backyard. *Id.* at 371; 374; 412–13.

The police arrested Versaint, who was found sleeping on a couch in the living room, and five others: Philistine Jean, who was found sleeping on the floor by the door, with a loaded gun nearby, Jt.App. at 369–70; 477, Well Thomas, Rosette Germain, Dernelia Remedor, and Amy Deal.[2]

---

1. Versaint was sentenced on the distribution charge to a five year term of imprisonment, to be followed by a special parole term of three years, and on the conspiracy charge to a seven year term of imprisonment. Jt.App. at 44.

2. Except for Amy Deal, those arrested were Haitians.

*Id.* at 371. The police took them outside and placed them in front of a car in the light of its headlights. *Id.* at 226–27; 271; 300. Downes identified each of the individuals, except for one, Philistine Jean, as having been present during one or both of two undercover drug purchases he had made, on February 3rd and 17th. Subsequently, Downes identified each from their identification card or driver's license. *Id.* at 222–23.

A federal grand jury indicted all of the six.[3] Jt.App. at 14–15. The four count indictment specifically charged Versaint with one count of knowing distribution of crack cocaine in excess of five grams on February 17, 1987 (Count II) and one count of conspiracy to distribute and to possess and with intent to distribute crack cocaine from on or about January 26, 1987, through February 20, 1987 (Count IV). *Id.* at 44.

Versaint was tried jointly with Philistine Jean, Well Thomas, Rosette Germain and Dernelia Remedor.[4] Amy Deal was not tried, having entered into a plea agreement with the government. Jt.App. at 583–85. At trial, the government based its case against Versaint principally on Downes's testimony concerning his five visits to the mobile home and his two purchases of drugs from its occupants. *Id.* at 188–224. Deal, the government's cooperating witness, also gave testimony concerning Versaint's participation in the drug activities conducted from the mobile home. *Id.* at 102–03, 176–77. There was no physical evidence presented at trial linking Versaint to the premises. *Id.* at 478.

Downes's testimony at trial differed in three respects from the contents of a police report that he prepared on March 20, 1987, one month after the arrests, in which he described the February 17 undercover purchase of $50 worth of cocaine. Jt.App. at 615. At the top of Downes's report there is a box for the name of the subject of the report, which is filled with the name "Jean." *Id.* The report does not name anyone else in connection with the drug transaction on February 17th. *Id.* At trial, however, Downes testified that (1) the individual who answered the door was Versaint, *id.* at 208; (2) that two people, Germain and Versaint, participated in the transaction, *id.* at 208–09; and (3) that two others, Remedor and Thomas, were present when he made the drug buys. *Id.* at 211–12.

Versaint sought to introduce Downes's report as substantive evidence, for the truth of its contents concerning the identity of the individual who answered the door and participated with Germain in the cocaine sales to Downes. Jt.App. at 232, 236. The district court held that the police report could not be admitted under Fed.R. Evid. 803(8)(C), the public records exception to the hearsay rule, because it lacked the requisite trustworthiness. The district court did, however, permit Versaint to use the report in order to impeach Downes's testimony. Jt.App. at 527–28.

In addition, Deal's testimony at trial differed from statements that she made prior to trial. At a meeting with police officers and attorneys from the United States Attorney's Office, Deal initially stated that Jean was the man involved in the drug sale to Downes. Jt.App. at 97–98. She also stated then that she believed that the second drug sale to Downes occurred not on February 17th, but on February 19th. *Id.* at 21, 46–47. At a second pre-trial meeting, Deal stated that Versaint had been at the house, but did not positively identify him as the person who gave Downes the crack on that date. *Id.* at 46. At trial, however, Deal stated positively that Downes had bought the cocaine from Versaint. *Id.* at 176–77.

The defense attempted to impeach Deal by showing her a letter sent by the Assistant United States Attorney to Versaint's

---

3. The grand jury also indicted another Haitian immigrant, Samson Orelien. He was not tried, however, as the police were unable to apprehend him. Jt.App. at 15.

4. Appellant filed a motion for severance, the denial of which by the district court is one of the issues on appeal. Jt.App. at 16–19. Because we reverse on other grounds, it is not necessary to reach this issue.

counsel pursuant to the prosecution's discovery obligations. Jt.App. at 180–81; *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (due process clause requires prosecution to disclose exculpatory evidence to defendant). The purpose of showing Deal the letter, which related Deal's statement to the government about Jean, was to refresh her recollection about this prior statement. Upon being shown the letter, Deal did admit that she had first identified Philistine Jean as the person involved in the transactions with Downes, but she denied saying subsequently that she could not be positive that it had been Versaint who participated in the transactions. Jt.App. at 179, 181. The defense then tried to impeach Deal's testimony by bringing out this prior inconsistent statement through the testimony of two of the three police officers who had also been present at the pre-trial meetings. One officer testified that he did not recall Deal's prior inconsistent statement, *id.* at 338–40, and the other stated merely that Deal might have had some doubt. *Id.* at 264.

Not satisfied that these answers conclusively impeached Deal, the defense attempted to call one of the prosecutors who had been present at the meeting with Deal. Jt.App. at 529–30. That Assistant United States Attorney was also one of the prosecutors trying the case against Versaint.

The district court ruled that the defense could not call this prosecutor, because requiring her to be a witness would work a hardship on the United States Attorney's Office. *Id.*

■ The jury found Versaint guilty on both counts. On appeal, Versaint argues that the district court abused its discretion by excluding Trooper Downes's police report as substantive evidence and by precluding the defense from calling a prosecuting attorney as a witness.[5]

## II. DISCUSSION

### A. Trooper Downes's Report

Versaint's defense at trial was simple: he was not the person from whom Trooper Downes purchased crack cocaine on the February 17 visit to the mobile home. At trial, Versaint sought to introduce Trooper Downes's police report as substantive evidence under Fed. R.Evid. 803(6), the business record exception to the hearsay rule.[6] In response to this proffer of evidence, the government argued that although the police report was a public record within the meaning of Fed.R.Evid. 803(8), it failed to qualify as an exception to the hearsay rule, because it did not fulfill the criteria of trustworthiness established by that rule.[7]

---

5. The government contends that the appellant should not be allowed to include either the police report or the government's *Brady* letter in the appellate record and should not have been permitted to make references to them in his brief. The government reasons that since neither the discovery letter nor the police report were admitted into evidence at trial (although both were used for impeachment purposes), they are not a part of the record on appeal in this case. This paradoxical position would deprive a reviewing court of the opportunity ever to review a district court's decision refusing to admit proffered evidence or to permit a witness to testify. We decline to adopt this view and will deny the government's motion to strike. If the practice in the district court is not to retain in the court record material offered but not admitted into evidence, we think it would be desirable practice to request the district court to make this material a part of the record for appeal purposes if the court ruling is to be challenged.

6. This rule provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed.R.Evid. 803(6).

7. This rule provides:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pur-

Jt.App. at 516–17. The district court agreed with the government. The district court noted that Trooper Downes had written the report one month after he had conducted the undercover activities, and reasoned that since "the investigation leading up to the arrests had been completed[,] [t]here was no[ ] ... pressure upon Detective Downes to record carefully, exactly what had occurred." Jt.App. at 527. The district court therefore permitted the report to be used as impeachment evidence, but did not admit it as substantive evidence. *Id.* at 527–528.

Versaint contends here that Trooper Downes' report is admissible under either Fed.R.Evid. 803(6) or Fed.R.Evid. 803(8). With respect to Fed.R.Evid. 803(8), he argues that Downes's delay in preparing the report is irrelevant since, under the rule, preparation of a report at or near the time of the event is not required. He also argues that the government failed to meet its burden under Fed.R.Evid. 803(8) of making an affirmative showing of untrustworthiness, since it did no more than point to the delay in the report's preparation.

The government argues that even if exclusion of the police report was error, it was harmless error because appellant was able to make full and effective use of the report during trial by impeaching Trooper Downes's testimony regarding the identity of the individual involved in the drug transactions. In support of this position, the

government relies on the Supreme Court's statement that, "[i]f, when all is said and done ... the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand." *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

We review district court decisions to admit or exclude evidence under an abuse of discretion standard. *See generally In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 260 (3d Cir.1983) *rev'd on other grounds sub nom. Matsushita Electric Ind. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a decision to admit or exclude evidence, this Court must determine whether the district court error affected a substantial right of the defendant. Fed.R.Evid. 103(a).[8] In deciding that an error is not harmless, we must, similarly, determine that it "does not affect substantial rights" of the defendant. Fed.R.Crim. P. 52(a).

▮ We agree with the district court that the admissibility of the police report is appropriately considered under Fed.R.Evid. 803(8). *United States v. DePeri*, 778 F.2d 963, 976 (3d Cir.1985) (FBI reports fall under the public record exception to the hearsay rule and are admissible against the government), *cert. denied sub nom. Pecic v. United States*, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986).[9] Under this

suant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
Fed.R.Evid. 803(8).

**8.** This rule provides for:
(a) Effect of erroneous ruling.
Error may not be predicated upon a ruling which admits or excludes evidence unless a *substantial right* of the party is affected, and
(1) Objection.
In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objec-

tion, if the specific ground was not apparent from the context; or
(2) Offer of proof.
In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
(emphasis added).
Fed.R.Evid. 103(a).

**9.** Since we conclude that the police report is admissible under Fed.R.Evid. 803(8), we need not determine whether the report also meets the standard for admission under Fed.R.Evid. 803(6). *See United States v. Snyder*, 787 F.2d 1429, 1434 (10th Cir.) (police reports cannot be given presumption of reliability and regularity accorded a business record), *cert. denied,* — U.S. ——, 107 S.Ct. 134, 93 L.Ed.2d 78 (1986) (tape recorded police emergency calls should not have been considered under the business

rule, this Court must decide whether the district court abused its discretion by "[g]iving undue weight to trustworthiness factors of slight relevance while disregarding factors more significant." *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d at 266 (3d Cir.1983). We are not persuaded by the rationale underlying the district court's finding that the police report was untrustworthy. Fed.R. Evid. 803(8) does not require that a report be made at or near the time of the event it is describing. It does require that the party objecting to inclusion make an affirmative showing that the proffered evidence is untrustworthy. *Bradford Trust Co. v. Merrill Lynch,* 805 F.2d 49, 54 (2d Cir. 1986) (quoting *Kehm v. Proctor & Gamble Mfg. Co.,* 724 F.2d 613, 618 (8th Cir.1983)). The government made no showing that Downes had any reason *not* to be accurate in setting out what he knew in his police report. On the contrary, Downes's testimony that he volunteered to complete the report when he discovered that it had not been written by those responsible for it, even though the investigation had already been completed, implies that he wanted to ensure an accurate record of his undercover activities. Jt.App. at 219–220. Fed.R. Evid. 803(8) is "premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Bradford Trust Co.,* 805 F.2d at 54. The government does not provide any evidence that Downes's actions deviated from this standard of public service. In the absence of a showing of untrustworthiness, we find that the district court abused its discretion in excluding the report's admission as substantive evidence.

We also find unconvincing the government's contention that the district court's error was harmless. Versaint's defense was that he was not the individual from whom Trooper Downes purchased the crack cocaine. In this case, in which the issue of identification is critical, it cannot be said that the exclusion of the police report naming a co-defendant in connection with the activities with which Versaint was charged "had but very slight effect." *Kotteakos,* 328 U.S. at 764, 66 S.Ct. at 1248. *Accord United States v. Smith,* 521 F.2d 957, 969–971 (D.C.Cir.1975). We find that the district court's ruling prevented the defense from introducing significant relevant evidence to support Versaint's claim of misidentification.[10]

The government attempts to minimize the error by stating that Trooper Downes' testimony was corroborated by Deal. But, as we recounted above, Deal's testimony was contradicted by her prior statements. The record reveals that Deal, at least initially, expressed uncertainty regarding the identity of the person involved in the drug transactions. We find that Deal's confusion as to the seller's identity heightens, rather than diminishes, the importance of allowing the defense to admit the police report as substantive evidence. Both the critical nature of the contents of the report and Deal's equivocation regarding Versaint's identification, lead us to conclude that the district court's failure to admit the police report impaired Versaint's substantial right of introducing significant relevant evidence in his defense. Under these circumstances, we cannot say the error was harmless. *Government of the Virgin Islands v. Toto,* 529 F.2d 278, 284 (3d Cir. 1976). We hold that the district court abused its discretion in refusing to admit

records exception); *United States v. Pazsint,* 703 F.2d 420, 424 (9th Cir.1983); *United States v. Smith,* 521 F.2d 957, 965, 968 n. 24 (D.C.Cir. 1975) (same result obtains under Fed.R.Evid. 803(6) as under Business Records Act; accurate transcription of police radio broadcast admissible as a business record for impeachment purposes with proper foundation); *Colvin v. United States,* 479 F.2d 998, 1002–03 (9th Cir.1973) (when police reports are not prepared in regular course of business, they are not admissible un-

der business records exception). *See also* Advisory Committee Note to Fed.R.Evid. 803(6).

10. The district court's limiting instruction to the jury that "earlier contradictory statements are admissible only to impeach the credibility of the witness, and not to establish the truth of the statement," Jt.App. at 594, allowed the jury to view the contents of the report as discrediting Trooper Downes, but precluded them from accepting the report's version of events as true.

Trooper Downes's report under Fed.R. Evid. 803(8).[11]

### III.

For the foregoing reasons, we will vacate the judgment and sentence of the district court, and remand for further proceedings consistent with this opinion.

---

**11.** Appellant also argues that the district court abused its discretion by refusing to permit him to call as a witness the Assistant United States Attorney who was present at the meeting during which Deal stated she could not be certain that it was Versaint who had participated in the drug transactions with Downes. District courts have great latitude in deciding whether a defendant will be prohibited from calling a witness, *see United States v. Birdman,* 602 F.2d 547 (3d Cir. 1979). However, appellant's contention need not be considered since we have granted a new trial. The United States Attorney will be in a position to decide whether he wishes to obviate this issue from arising at the retrial.

We have also carefully considered Versaint's contention that the district court abused its discretion in permitting Detective Esham to testify concerning Downes's statements to him and conclude that it is without merit.