NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2242
_____

UNITED STATES OF AMERICA

v.

DENISE DAVIS,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 2-07-cr-00909-001
(Honorable William H. Walls)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 4, 2013

Before:  SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: April 30, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Denise Davis appeals her judgment of conviction for embezzlement and theft of

public money (18 U.S.C. § 641) and making false statements (18 U.S.C. § 1001(a)(2)).

I.

Denise Davis was a legal assistant at the U.S. Attorney's Office in Newark, New Jersey, from 1985 to 2006. During that time, she lived in a low-income public housing project in Newark administered by Newark Housing Authority (NHA) and subsidized by the United States Department of Housing and Urban Development. Her housing subsidies were calculated based on her income, as reported in her annual applications for continued occupancy. In those applications, Davis did not disclose her federal employment and falsely represented that she worked at various hair salons. Once her federal employment was discovered, Davis submitted altered pay stubs falsely stating she was a part-time employee of the U.S. Attorney's Office. As a result of Davis's misrepresentations, she received $113,507 in rent subsidies to which she was not entitled. A grand jury indicted Davis on one count of embezzlement and theft of public money and four counts of making false statements.

At trial, Rosemary Iannacone, an administrative officer at the U.S. Attorney's Office in Newark, testified that notifications of personnel action showed Davis worked there full-time from 1985 to 2006, earning an annual salary that increased from $12,862 to $46,846 over the course of her employment. An NHA employee testified Davis submitted applications for continued occupancy each year from 2003 to 2006 stating she was employed at Sapphire's hair salon or City Coiffs Hair Salon, earning $175 or $185 weekly, and, starting in 1999, submitted altered pay stubs and employment verification forms from Sapphire's and City Coiffs. Ramona Ruth-Hinton, a childhood friend of Davis's, testified she had written a letter falsely stating Davis was a City Coiffs

2

employee. Davis had requested the letter, stating she needed it for a certification for housing. Ruth-Hinton testified she herself had not written or signed the employment certification forms from City Coiffs and that the information contained in them was false.

An NHA employee testified that once she discovered Davis's federal employment, she asked Davis to come to her office to fill out an income verification form to send to the U.S. Attorney's Office. Once there, Davis attempted to take the form with her. Instead, NHA sent the form directly to the U.S. Attorney's Office, which informed NHA that it had employed Davis as a legal assistant since March 11, 1985. At the same time, Davis submitted an earnings statement of a part-time employee of the U.S. Attorney's Office as her own. Patrick Reynolds, an information technology specialist at the U.S. Attorney's Office in Newark, testified that a document containing data from the part-time employee's earnings statement was discovered on Davis's password-protected work computer.

An NHA employee testified the rent NHA charged tenants was thirty percent of their adjusted income[1] or, starting in 1998, if it was lower, a flat rate. The employee compared the rent Davis had paid from 1985 to 2006 with the amount she would have paid had she accurately reported her federal income, demonstrating a discrepancy of $113,507.

The jury convicted Davis on all counts. Davis was sentenced to fifteen months' imprisonment. She moved for a new trial, challenging the weight of the evidence and

---

[1] The adjusted income is the total income of all household members adjusted for allowances, such as dependents, disability, medical expenses, or student status.

alleging various trial errors. The court denied the motion, and Davis appeals.

II.[2]

A.

Davis was convicted on four counts of "knowingly and willfully" making a "materially false, fictitious, or fraudulent statement or representation" in a matter within the jurisdiction of the Department of Housing and Urban Development (18 U.S.C. § 1001(a)(2)) and one count of "embezzl[ing], steal[ing], purloin[ing], or knowingly convert[ing] to h[er] use or the use of another . . . any record, voucher, money, or thing of value of the United States or of any department or agency thereof" (18 U.S.C. § 641). Davis contends her conviction for making a false statement was against the weight of the evidence because "[t]he government failed to offer the testimony of any individual who could state, based on personal knowledge, that the four specific certifications and applications for continued occupancy i[]dentified in the Superseding Indictment were completed or even signed by Ms. Davis." Appellant's Br. at 21. Similarly, Davis contends her conviction for embezzlement of public money is against the weight of the evidence because "the government failed to offer the testimony of any individual who could state, based on personal knowledge, that the documents upon which the NHA relied in calculat[ing] rent . . . were completed or even signed by Ms. Davis." *Id.* at 23.

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A district court

can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted). "Motions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases." *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987) (citation omitted).

The District Court did not err by finding the jury's verdict was not contrary to the weight of the evidence. NHA documents showed Davis's applications for rent subsidies did not report her federal employment and falsely represented that she was employed at Sapphire's and City Coiffs, earning significantly less than her federal salary. An NHA employee testified Davis's submission of these documents resulted in a loss of $113,507 in government funds. Ruth-Hinton testified Davis asked her to write a letter, for a certification for housing, falsely stating Davis worked at City Coiffs. Ruth-Hinton also testified she did not write or sign the City Coiffs employment certification forms submitted to NHA and the information contained in them was false. An NHA employee testified that when she learned that Davis was a federal employee, contrary to the information Davis had provided in her NHA applications, Davis attempted to take an employer's income verification form with her. Davis then submitted an altered earnings statement of a part-time employee of the U.S. Attorney's Office as her own. Reynolds

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We "review a district court's denial of a motion for a new trial for

testified data from the part-time employee's earnings statement was in a document on Davis's password-protected computer and Davis could have created the document using technology available in the U.S. Attorney's Office.

Davis contends there was insufficient evidence to prove she committed the crimes prior to 1999. She is incorrect. The government presented evidence of Davis's salaries and rent subsidies starting in 1985, when she began her federal employment. An NHA employee testified Davis's subsidies each year would have been significantly lower had she accurately represented her earnings to NHA. The District Court added "that this evidence, when considered in conjunction with the fraudulent activity discovered in the NHA records from 1999-2006, would enable a reasonable jury to conclude that the defendant had been obtaining excessive rent subsidies going back to when she was initially employed by the federal government." *United States v. Davis*, No. 07-909, 2012 WL 194094, at *3 (D.N.J. Jan. 23, 2012).

## B.

We now address Davis's specific claims of trial error.[3]

## 1.

During a pretrial preparation interview, Ruth-Hinton told the government that she

---

abuse of discretion." *Hook v. Ernst & Young*, 28 F.3d 366, 370 (3d Cir. 1994).
[3] We review for abuse of discretion a district court's evidentiary rulings, *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 80 (3d Cir. 2009), including its limitations on cross-examination, *United States v. Stadtmauer*, 620 F.3d 238, 271 (3d Cir. 2010), admissions or exclusions of evidence, *United States v. Versaint*, 849 F.2d 827, 831 (3d Cir. 1988), and admissions of lay opinion testimony, *Stadtmauer*, 620 F.3d at 260. "We review a district court's decisions regarding jury instructions for abuse of discretion." *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008).

had been arrested and convicted sometime between 1991 and 1995 on a drug-related charge but had not reported that information on a job application. The government checked Ruth-Hinton's criminal history and found no conviction record. The government filed an *in limine* motion to exclude evidence of the conviction. In opposing the motion, Davis sought to cross-examine Ruth-Hinton about whether she had lied about her conviction, contending it would be probative of her character for truthfulness. The court granted the *in limine* motion, explaining the arrest was remote and there was no conviction record or other evidence that Ruth-Hinton had lied. Davis contends, as she did in her post-trial motion, that the court erred under Fed. R. Evid. 608(b) and 609(b) and the Confrontation Clause. Davis is incorrect.

District courts have "wide discretion in limiting cross-examination. 'A restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to substantial rights of the defendant.'" *United States v. Casoni*, 950 F.2d 893, 918-919 (3d Cir. 1991) (quoting *United States v. Adams*, 759 F.2d 1099, 1100 (3d Cir. 1985)). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted).

Under Rule 608(b), "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-

7

examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness . . . ." Fed. R. Evid. 608(b). The District Court did not err by finding Ramona-Ruth's alleged lies about an over ten-year-old drug charge were "far too remote" to be "probative of the witness's truthfulness or untruthfulness." *Davis*, 2012 WL 194094, at *4. The court further found the lies may not have occurred "[a]s the drug charge resulted in no criminal record." *Id.*

Under Rule 609(b), "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[, e]vidence of the conviction is admissible" to attack the witness's character for truthfulness "only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). Davis did not provide the government with the required notice.

Moreover, the District Court did not err by finding the "the probative value of an at least 13-year-old drug charge does not substantially outweigh its prejudicial effect." *Davis*, 2012 WL 194094, at *4. As noted, the court explained the drug charge, which occurred "over 10 years ago . . . [and] resulted in no criminal record, is so remote that . . . its minimal probative value was outweighed by the risk of prejudice or confusion of the issues to the jury." *Id.* For the same reasons, the court did not err when it found admission of the evidence was not required under the Confrontation Clause. *See Van Arsdall*, 475 U.S. at 679 ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [defense counsel's] cross-examination based on

8

concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

2.

During Iannacone's cross-examination, Davis sought to introduce four notifications of personnel action, which the government had not introduced on direct examination, showing that after Davis appealed the decision of the U.S. Attorney's Office to suspend her indefinitely without pay in 2006, the U.S. Attorney's Office revoked her suspension and allowed her to resign. The government objected on relevance grounds. Davis responded that the rule of completeness required the introduction of the additional notices to complete her personnel file and show she had resigned. The court sustained the objection, explaining "the rule of completeness does not obviate the need for relevance," and the outcome of the administrative process was irrelevant to the criminal matter at hand. Davis contends, as she did in her post-trial motion, that the court erred by sustaining the government's objection. Davis is incorrect.

Fed. R. Evid. 106 provides the rule of completeness: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Under this rule, "a second writing may be required to be read if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984). "[T]he district court has broad discretion to conduct the trial in an orderly and efficient manner,

9

and to choose among reasonable evidentiary alternatives to satisfy the rule of completeness reflected in Rule 106." *United States v. Webber*, 255 F.3d 523, 526 (8th Cir. 2001) (citing *United States v. Abroms*, 947 F.2d 1241, 1250 (5th Cir. 1991)).

As the District Court found, "[t]he individual Notifications of Personnel Action that the Government introduced were discrete documents" used "to prove that Davis was employed by the federal government and to show the amount of her federal income." *Davis*, 2012 WL 194094, at *5. They did not include any information about Davis's suspension or termination from the U.S. Attorney's Office. Accordingly, information that Davis had resigned would not have explained the admitted documents. Furthermore, the additional notifications were irrelevant because they merely reflected the outcome of an administrative process.

3.

At trial, Reynolds testified he had searched Davis's computer, on behalf of the U.S. Attorney's Office, and had found a WordPerfect document called "spread chart" that "look[ed] like a spreadsheet." The document contained identical data to that appearing on a part-time employee's earnings statement. Reynolds testified that at the time the document was created, the U.S. Attorney's Office had scanners that would save scanned documents as Adobe PDF files on employees' computers. The computers had software that could convert Adobe PDF files into WordPerfect files. The conversion software at the time "wasn't good," and it often converted graphics into random characters. The government asked Reynolds whether, "based on your experience using the Adobe software and scanning," the appearance of the "spread chart" WordPerfect file was

"consistent with what would happen if a document like [the earnings statement] were scanned?" Davis objected that Reynolds, as a lay witness, was not qualified to answer the question. The government responded that Reynolds was very familiar with the software in question and was being asked a question he could answer from personal experience. The court agreed and overruled the objection. Reynolds testified the horizontal and vertical lines in the earnings statement could have produced the characters in the "spread chart" WordPerfect file. Davis contends, as she did in her post-trial motion, that the court should not have permitted Reynolds to testify about the document because he did not have personal knowledge about it and was not qualified as an expert. Davis is incorrect.

Lay witnesses may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

> This [rule] does not mean that an expert is always necessary whenever the testimony is of a specialized or technical nature. When a lay witness has particularized knowledge by virtue of her experience, she may testify – even if the subject matter is specialized or technical – because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702.

*Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). Trial courts have broad discretion to admit or exclude opinion testimony. *Eichorn v. AT&T Corp.*, 484 F.3d 644, 649 (3d Cir. 2007).

The District Court did not err when it found Reynolds's "testimony was permissible because it fell within his personal knowledge based upon his day-to-day

11

knowledge as an employee in the IT department, and because he was testifying about inferences he could draw from the documents." *Davis*, 2012 WL 194094, at \*6. *See United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003) ("A witness testifying about business operations may testify about 'inferences that he could draw from his perception' of a business's records, or 'facts or data perceived' by him in his corporate capacity.") (quoting *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403, 404 (3d Cir. 1980)). Reynolds testified the "spread chart" document "look[ed] like a spreadsheet," and the technology available in the U.S. Attorney's office at the time the document was created would have allowed an employee to scan a document, save it as a PDF file, and convert it into a WordPerfect file that might have contained characters like those appearing in the "spread chart" document. As the District Court found, Reynolds "was not asked to offer a specific opinion as to whether the document" itself "was created using that process – he was merely testifying as to a hypothetical" that it could have been created using that process. *Davis*, 2012 WL 194094, at \*6. We see no abuse of discretion.

4.

In its jury instructions, the trial court explained that to find Davis guilty of making false statements:

> The first element . . . that the Government must prove beyond a reasonable doubt [is] that the defendant made a statement or representation. There is no distinction between oral and written statements. The Government need not prove that the defendant physically made or otherwise personally prepared the statement in question. It is sufficient if she caused the statement charged against her to have been made.

The court also explained parties may introduce handwriting evidence to prove the identity

12

of the person who committed a crime:

> To do this, a party may present a known sample of a person's handwriting, one that is proved to come from that person. This known handwriting sample is then compared with any other handwriting samples being introduced to prove who committed the crime. . . . If you find that . . . [the] documents [produced by NHA] do not bear [Davis's] actual signature, you may disregard such evidence. . . .

During deliberations, the jury asked the court "[i]f the signatures do not match, does that make the defendant not guilty? Does it have significance [i]n the case?" Davis suggested that the court, in response, repeat its handwriting jury instruction. The government responded "[t]here w[as] more than one instruction you gave regarding the signature," and suggested that the court also repeat its instruction regarding making a false statement. The court agreed with the government, and repeated both instructions to the jury. It explained to the jury "it's up to you to determine, from your evaluation of the evidence, which [instruction] you should follow."

Davis contends the District Court improperly responded to a jury inquiry by repeating both instructions and stating it was for the jury to decide, based on its evaluation of the evidence, which to apply. Davis does not contend the court's response was incorrect but states it did not "directly answer the question[] asked," Appellant's Br. at 8, and was "confusing." *Id.* at 19. Davis is incorrect. As the District Court explained,

> The Court['s] . . . response to the jury inquiry was appropriate because the jury specifically asked whether matching the defendant's signature was required to find the defendant guilty. The first instruction told the jury that it could use its discretion and disregard evidence regarding the signatures in rendering its verdict. It was important for the jury to receive clarification that, whether or not the evidence was disregarded, it could still find Davis guilty if it determined that she had caused the false statement to be made.

*Davis*, 2012 WL 194094, at \*7. *See Hoffecker*, 530 F.3d at 167 ("We will order a new trial on account of a district court's refusal to give a proposed jury instruction 'only when the requested instruction was correct, not substantially covered by the instructions given, and was so consequential that the refusal to give the instruction was prejudicial to the defendant.'") (quoting *United States v. Leahy*, 445 F.3d 634, 651 (3d Cir. 2006)).

Davis also contends the court's response "could have very well made it possible for the jury to have convicted [her] without finding [guilt] beyond a reasonable doubt." Appellant's Br. at 19-20. The court did not err when it rejected this contention, as its instruction on making a false statement "specifically stressed the importance of this high legal standard" by stating "'the government must prove beyond a reasonable doubt' that the defendant made the representations." *Davis*, 2012 WL 194094, at \*7.

III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.